716 S.E.2d 454

**WACHOVIA BANK, National Association, Respondent,**

v.

**William E. BLACKBURN, Judith Blackburn, Tammy S. Winner, Watson E. Felder, Gary F. Ownbey, and South Island Plantation Association, Inc., Defendants,**

**Of Whom William E. Blackburn and Judith Blackburn are, Appellants.**

**No. 4874.**

Court of Appeals of South Carolina.

Heard April 5, 2011.

Decided Aug. 24, 2011.

Rehearing Denied Oct. 21, 2011.

580

Glenn V. Ohanesian, of Myrtle Beach, for Appellant.

Robert C. Byrd and Krista McGuire, both of Charleston, for Respondent.

LOCKEMY, J.

In this mortgage foreclosure action, William and Judith Blackburn appeal the circuit court's order granting Wachovia's motion to strike their jury trial demand. We affirm in part and reverse in part.

## FACTS/PROCEDURAL BACKGROUND

On February 14, 2006, William Blackburn delivered a promissory note (the note) to Wachovia in the amount of $463,967 to finance the purchase of "investment property" (the property) in South Island Plantation, a Georgetown County planned development. The note was secured by a mortgage on the property executed by William Blackburn, Judith Blackburn, Tammy Winner, and Watson Felder. Judith Blackburn, Winner, and Felder also executed personal guaranties to secure the note.[1] The note and each of the guaranties contained waiver of jury trial provisions. The note signed by William Blackburn contained the following jury trial provision:

> **WAVIER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND

---

1. On October 12, 2007, Felder conveyed his interest in the property to Gary Ownbey.

INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS NOTE....

(bold and capitalization in original, font size not to scale). The guaranty signed by Judith Blackburn contained the following jury trial provision:

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF GUARANTOR BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS GUARANTY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO ACCEPT THIS GUARANTY....

(bold and capitalization in original, font size not to scale).

On November 13, 2008, Wachovia filed this foreclosure action against the Blackburns, Winner, and Felder, asserting the note was in default and it was entitled to a judgment against the defendants in the amount of $473,747.24. In response, the Blackburns filed a second amended answer, counterclaim, cross-claim, and third-party complaint in which

they asserted claims against Wachovia and several third-party defendants.[2] The Blackburns asserted the following counterclaims against Wachovia: (1) negligent misrepresentation, (2) unfair trade practices, (3) promissory estoppel, (4) breach of contract/breach of contract accompanied by a fraudulent act, (5) breach of fiduciary duty, (6) fraud/fraud in the inducement, (7) breach of contract/negligence, (8) breach of contract, (9) civil conspiracy, and (10) illegality of contract. The Blackburns alleged Wachovia partnered with the third-party defendants[3] to promote and sell the property at a "high pressure" sales event which included a lottery. According to the Blackburns, Wachovia and the third-party defendants defrauded buyers by artificially inflating property values and making misrepresentations regarding the construction of amenities in the development. The Blackburns demanded a jury trial.

On June 18, 2009, Wachovia filed a motion to strike the Blackburns' jury trial demand and refer the case to the master-in-equity. Wachovia argued the Blackburns waived their right to a jury trial in the note and guaranty. In a memorandum opposing Wachovia's motion to strike, the Blackburns alleged (1) there was not a knowing and voluntary waiver, (2) the language of the waivers did not apply to their counterclaims, (3) the waivers were unconscionable, and (4) the circuit court could order a jury trial in its discretion pursuant to Rule 39(b), SCRCP. In a December 7, 2009 order, the circuit court granted Wachovia's motion, finding the jury trial waivers in the note and guaranty were clear and unambiguous and the Blackburns' counterclaims were within the scope of the waivers. The circuit court held the Blackburns were charged with having read the contents of the note and guaranty and were on notice of the jury trial waivers. The circuit court found the Blackburns' Rule 39(b), SCRCP, argument was without merit, and referred the action to the master. This appeal followed.

---

2. The Blackburns filed their original answer on February 2, 2009, and amended answer, counterclaim, cross-claim, and third party complaint on February 13, 2009.

3. The third-party defendants included Winyah Bay Holdings, LLC; Source One Properties, LLC; and Waterpointe Realty, LLC.

## STANDARD OF REVIEW

"A mortgage foreclosure is an action in equity." *U.S. Bank Trust Nat. Ass'n v. Bell*, 385 S.C. 364, 373, 684 S.E.2d 199, 204 (Ct.App.2009). "In an appeal from an action in equity, tried by a judge alone, we may find facts in accordance with our own view of the preponderance of the evidence." *Id.* "Whether a party is entitled to a jury trial is a question of law." *Verenes v. Alvanos*, 387 S.C. 11, 15, 690 S.E.2d 771, 772 (2010). "An appellate court may decide questions of law with no particular deference to the [circuit] court." *Id.* at 15, 690 S.E.2d at 772–73.

## LAW/ANALYSIS

### I. Knowing and Voluntary Waiver

The Blackburns argue they did not knowingly and voluntarily waive their right to a jury trial. We disagree.

The Blackburns contend there is no evidence in the record they had actual knowledge of the waivers. They maintain the only evidence regarding whether they knowingly and voluntarily waived their right to a jury trial is their affidavit. In their affidavit, the Blackburns asserted they did not knowingly, voluntarily, or intentionally waive their right to a jury trial and were "not aware of any jury trial waiver" until Wachovia's motion to strike jury demand. In their brief, the Blackburns rely on *Leasing Service Corp. v. Crane*, 804 F.2d 828 (4th Cir.1986) to support their contention that a party seeking the enforcement of a waiver must prove that consent was both voluntary and informed. The Blackburns note the *Crane* court cited *National Equipment Rental Ltd. v. Hendrix*, 565 F.2d 255 (2d Cir.1977), wherein the Second Circuit affirmed a finding that a provision whereby a lessee waived a jury trial buried in the eleventh paragraph of a fine print, 16–clause agreement did not constitute a knowing and intelligent waiver of the lessee's right to a jury trial.

Wachovia argues that by signing the note and guaranty, the Blackburns are deemed to have read the documents and cannot avoid their effects by arguing otherwise. Wachovia maintains it did not have a duty to ensure the Blackburns had read and understood the terms of the note and guaranty.

Wachovia further contends the waivers are conspicuous, the note and guaranty are not lengthy documents, and there is no evidence the Blackburns are unsophisticated or were incapable of understanding the note and guaranty.

We agree with Wachovia. First, we note that while the Blackburns rely on federal case law in their brief, a parties' right to a jury trial in South Carolina is governed by state law. *See Pelfrey v. Bank of Greer*, 270 S.C. 691, 693, 244 S.E.2d 315, 316 (1978) (holding the Seventh Amendment to the United State Constitution is not applicable to the States).

 We do not believe the Blackburns can avoid the waivers in the note and guaranty by arguing they were not knowing and voluntary. "A party may waive the right to a jury trial by contract." *Beach Co. v. Twillman, Ltd.*, 351 S.C. 56, 63, 566 S.E.2d 863, 866 (Ct.App.2002). "Such a waiver must be strictly construed as the right to trial by jury is a substantial right." *Id.* at 64, 566 S.E.2d at 866. "When a contract is unambiguous a court must construe its provisions according to the terms the parties used, understood in their plain, ordinary, and popular sense." *S.C. Farm Bureau Mut. Ins. Co. v. Oates*, 356 S.C. 378, 381, 588 S.E.2d 643, 645 (Ct.App.2003). "A person who signs a contract or other written document cannot avoid the effect of the document by claiming he did not read it." *Regions Bank v. Schmauch*, 354 S.C. 648, 663, 582 S.E.2d 432, 440 (Ct.App.2003). "A person signing a document is responsible for reading the document and making sure of its contents." *Id.* "Every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it." *Id.* "One who signs a written instrument has the duty to exercise reasonable care to protect himself." *Id.* at 665, 582 S.E.2d at 440. "The law does not impose a duty on the bank to explain to an individual what he could learn from simply reading the document." *Id.*

Here, the waivers are conspicuous and unambiguous. They are printed in all capital letters with the bold heading, "**WAIVER OF JURY TRIAL.**" Furthermore, the note and guaranty are not lengthy documents and the waivers contained therein are not buried within the language of other provisions. Rather, the waivers are contained in separate

paragraphs located just above the signature lines. By signing the note and guaranty, the Blackburns are charged with having read their contents, and therefore, they cannot avoid their effects by arguing they were unaware of the inclusion of the waivers. *See Regions Bank,* 354 S.C. at 663, 582 S.E.2d at 440 ("A person who signs a contract or other written document cannot avoid the effect of the document by claiming he did not read it."); *see also Id.* ("Every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it."). Accordingly, we find the jury trial waivers are enforceable.

## II. Applicability

■ The Blackburns argue the jury trial waivers in the note and guaranty do not apply to their counterclaims. We agree.

Pursuant to the note and guaranty, the waivers at issue apply to

> any litigation based on, or arising out of, under or in connection with this note [or guaranty], the loan documents or any agreement contemplated to be executed in connection with this note [or guaranty], or any course of conduct, course of dealing, statements (whether verbal or written) or actions of any party with respect hereto.

The Blackburns allege that while their counterclaims arise out of the same occurrence as the note, they do not arise out of the loan documents as required by the waivers. Pursuant to the note, "loan documents"

> refers to all documents executed in connection with or related to the loan evidenced by this Note and any prior notes which evidence all or any portion of the loan evidenced by this Note, and any letters of credit issued pursuant to any loan agreement to which this Note is subject, any applications for such letters of credit and any other documents executed in connection therewith or related thereto, and may include, without limitation, a commitment letter that survives closing, a loan agreement, this Note, guaranty agreements, security agreements, security instruments, financing statements, mortgage instruments, any renewals or

modifications, whenever any of the foregoing are executed, but does not include swap agreements.

The Blackburns contend their counterclaims arise from Wachovia's sales misrepresentations and failure to abide by promises to build infrastructure, amenities, and docks, and do not arise from the loan documents.[4] They maintain the definition of "loan documents" does not include sales contracts, deeds, promotional literature from the developer/seller, lottery procedure, or promises regarding docks and amenities and infrastructure. They also assert their counterclaims do not arise from the note, mortgage, loan application, financing statements, letters of credit, or any of the loan documents defined above. The Blackburns further argue the allegations of sales misrepresentations in their counterclaims are unrelated to the note, and thus, not subject to the waivers. The Blackburns rely heavily on *Aiken v. World Finance Corp. of South Carolina*, 373 S.C. 144, 644 S.E.2d 705 (2007) and *Partain v. Upstate Automotive Group*, 386 S.C. 488, 689 S.E.2d 602 (2010), two supreme court cases involving arbitration agreements, to support their argument.

*Aiken* involved a tort action based on the theft of Aiken's personal information by employees of World Finance. 373 S.C. at 146, 644 S.E.2d at 706. In *Aiken*, World Finance sought to enforce an arbitration clause to which Aiken had agreed in applying for a loan. *Id.* at 147, 644 S.E.2d at 707. The *Aiken* court found that "even the most broadly-worded arbitration agreements still have limits founded in general principles of contract law," and therefore, the court "will refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings." *Id.* at 151, 644 S.E.2d at 709. The court provided that it did not seek to exclude all intentional torts from the scope of arbitration, but only "those outrageous torts, which although factually related to the performance of the contract, are legally distinct from the contractual relationship between the parties." *Id.* at 152, 644 S.E.2d at 709. The *Aiken* court found the theft of Aiken's

---

4. The Blackburns maintain Wachovia "injected itself into the marketing and sale of [the] property ..., became a joint venturer or partner, and is therefore equally liable for sales misrepresentations made and failures to provide infrastructure, amenities, docks, etc."

personal information by World Finance employees to be unanticipated and unforeseeable tortious conduct that was not within the scope of the arbitration agreement. *Id.* at 151, 644 S.E.2d at 709.

In *Partain,* Partain alleged Upstate Auto fraudulently replaced the truck he purchased with a different truck at the time of pick-up. 386 S.C. at 490, 689 S.E.2d at 603. Partain filed suit against Upstate Auto alleging he was the victim of a "bait and switch" in violation of the South Carolina Unfair Trade Practices Act. *Id.* Based on an arbitration agreement, Upstate Auto moved to dismiss Partain's claim. *Id.* The *Partain* court found *Aiken* was controlling and concluded the arbitration clause did not apply because "the alleged actions of Upstate Auto constituted 'illegal and outrageous acts' unforeseeable to a reasonable consumer in the context of normal business dealings." *Partain,* 386 S.C. at 493, 689 S.E.2d at 604–05. Our supreme court noted Partain could not be held to have foreseen that Upstate Auto, after completing a sale, would substitute an entirely different vehicle in place of the truck he had agreed to purchase. *Id.* at 494, 689 S.E.2d at 605. Moreover, the court found Partain could not have "contemplated that, in signing the arbitration clause, he was agreeing to arbitrate claims arising from allegedly fraudulent conduct." *Id.*

Similarly, the Blackburns argue they cannot be held to have contemplated that, in signing the note and guaranty, they were agreeing to waive jury trial claims arising from allegedly fraudulent conduct. They contend that a reasonable person attempting to secure a loan from a bank could not foresee that the bank would partner with the developer/seller and make misrepresentations about the property and the construction of amenities.

Wachovia asserts the Blackburns' counterclaims are within the scope of the waivers because their claims concern Wachovia's "course of conduct," "course of dealing," "actions," and "statements" with respect to the loan transaction. Wachovia maintains the counterclaims arise out of the note because the Blackburns allege Wachovia, as part of its course of dealing, made misrepresentations to induce them to enter into the loan. Wachovia notes the Blackburns allege the marketing of

the property, the sale of the lots, and the provision of Wachovia loans were all part of a single transaction orchestrated by a partnership between Wachovia and the developers. Wachovia also alleges the Blackburns' counterclaims arise out of the property sales contract, which is an "agreement contemplated to be executed in connection with the note" and guaranty. Wachovia maintains our supreme court's holdings in *Aiken* and *Partain* (1) do not apply outside of the context of arbitration agreements, (2) apply only to consumer transactions, and (3) the Blackburns have not alleged any "outrageous" conduct like that which was excepted in *Aiken* and *Partain*.

We do not believe the allegations of sales misrepresentations and prepurchase fraud by the Blackburns are sufficiently related to the note, and thus, we do not believe they are subject to the waivers. Jury trial waivers are a substantial right and must be strictly construed. *Beach Co.*, 351 S.C. at 64, 566 S.E.2d at 866. Pursuant to the note and guaranty, the waivers apply to "any litigation based on, or arising out of, under or in connection with [the] note, the loan documents or any agreement contemplated to be executed in connection with [the] note." First, we find the Blackburns' counterclaims are not based on nor do they arise out of the note. The Blackburns' claims are based on the sales contract, the promotional literature regarding the development, the lottery procedure, and the promises made regarding amenities. Second, we find the Blackburns' claims are not based on or arise out of the loan documents. The definition of "loan documents" does not include sales documents, and the sales documents were not "executed in connection with or related to the loan" as required by the definition. Third, we find the sales contract was not an "agreement contemplated to be executed in connection with [the] note," as it was executed months prior to the note. Finally, we find the waivers do not apply to "any course of conduct, course of dealing, statements (whether verbal or written) or actions of any party with respect [to the note]." We note this clause refers to conduct and actions with respect to the note and does not refer to the sales transaction.

Furthermore, the Blackburns could not have contemplated that in signing the note and guaranty, they were waiving their right to a jury trial on claims arising from allegedly fraudulent conduct. *See Aiken*, 373 S.C. at 151, 644 S.E.2d at 709

(holding the theft of Aiken's personal information by World Finance employees was unanticipated and unforeseeable tortious conduct that was not within the scope of the arbitration agreement); *see also Partain*, 386 S.C. at 494, 689 S.E.2d at 605 (holding Partain could not have contemplated that, in signing the arbitration clause, he was agreeing to arbitrate claims arising from allegedly fraudulent conduct).[5] We find a reasonable buyer would not contemplate that a bank would partner with a developer/seller and make misrepresentations about a property and the construction of amenities. The Blackburns' counterclaims arise out of the alleged pre-sale misrepresentations and fraud of Wachovia, and not out of the note. Although the waivers are enforceable with regard to claims arising from the note, we find the Blackburns' allegations of sales misrepresentations and pre-purchase fraud are not within the scope of the waivers. Accordingly, applying a strict construction of the language of the waivers, we find they are unenforceable with regard to the Blackburns' counterclaims.[6]

## CONCLUSION

We affirm the circuit court's determination that the Blackburns knowingly and voluntarily waived their right to a jury trial. However, we reverse the circuit court's determination that the Blackburns' counterclaims were within the scope of the waivers.[7]

**AFFIRMED IN PART AND REVERSED IN PART.**

WILLIAMS and GEATHERS, JJ., concur.

---

**5.** While *Aiken* and *Partain* involve arbitration agreements and not jury trial waivers, we believe they are instructive.

**6.** We note this opinion does not preclude the circuit court, after appropriate discovery and/or testimony, from striking any or all of these counterclaims as insufficient and, if appropriate, referring any remaining equitable matters to the master-in-equity.

**7.** Based upon our reversal of the circuit court's order granting Wachovia's motion to strike jury demand, we need not address the remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate

court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).