755 S.E.2d 437

WACHOVIA BANK, NATIONAL ASSOCIATION, Petitioner,

v.

William E. BLACKBURN; Judith Blackburn; Tammy S. Winner; Watson E. Felder; Gary F. Ownbey and South Island Plantation Association, Inc., Defendants,

Of Whom William E. Blackburn; Judith Blackburn are, Respondents,

v.

Winyah Bay Holdings, LLC; Source One Properties, LLC; and Waterpointe Realty, LLC, Third Party Defendants.

Appellate Case No. 2011–203088.

No. 27359.

Supreme Court of South Carolina.

Heard Dec. 5, 2013.

Decided Feb. 26, 2014.

Rehearing Denied April 2, 2014.

Robert C. Byrd and Alyson Smith Podris, both of Parker, Poe, Adams, & Bernstein, LLP, both of Charleston, for Petitioner.

Glenn V. Ohanesian, of Ohanesian & Ohanesian, of Myrtle Beach, for Respondents.

Chief Justice TOAL.

Wachovia Bank, National Association (Wachovia), appeals the court of appeals' decision reversing the circuit court's determination that William and Judith Blackburns' (collectively, Respondents) counterclaims in a mortgage foreclosure suit were within the scope of a jury trial waiver signed by Respondents. We reverse in part and affirm in part.

### FACTS/PROCEDURAL BACKGROUND

■ On July 23, 2005, Winyah Bay Holdings, LLC (the Seller), held an event aimed at selling marsh-front lots located in South Island Plantation, an affluent, to-be-built housing development in Georgetown County. The Seller conducted the sale by lottery, using balls and numbers like the South

Carolina Education Lottery,[1] and geared the event toward on-the-spot sales. To facilitate same-day sales, the Seller had Wachovia and two unrelated realty and marketing companies (the Realtors) set up booths to promote financing the lot sales. Respondents allege that the Seller, the Realtors, and Wachovia further enticed potential buyers by promising that "day docks, roads, infrastructure, pool [sic], marsh walks, and other amenities would be in place within 18 months of the lottery." Respondents claim that these promises induced them into participating in the lottery.[2]

Over six months later, on February 14, 2006, Respondent William Blackburn delivered a promissory note to Wachovia in the amount of $463,967 to finance the purchase of one of the South Island Plantation lots. The note was secured by a mortgage and unconditional personal guaranties executed by Tammy Winner, Watson Felder, and Respondents.[3]

The note and guaranties contained virtually identical jury trial waivers:

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER ... AND BANK ... KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS NOTE, OR *ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO.* THIS PROVI-

---

1. It is a misdemeanor under South Carolina law to sell houses or land by lottery. S.C.Code Ann. § 16–19–10 (2003).

2. Although unclear from the Appendix, Respondents presumably signed the sales contract on July 23, 2005, the day of the event.

3. On October 12, 2007, Felder conveyed his interest in the property to Gary Ownbey. Respondents received assignments of rights from Winner and Felder to pursue their claims both individually and as assignees. As such, Winner, Felder, and Ownbey are not parties to this appeal.

SION IS A MATERIAL INDUCEMENT TO BANK TO
ACCEPT THIS NOTE.....

(Italic emphasis added).

Beginning in July 2008, Respondents failed to make payments on the note. Therefore, on November 13, 2008, Wachovia filed a foreclosure action. In its complaint, Wachovia stated that the note was in default, that they had accelerated the balance of the loan, and that they were thus entitled to judgment against the defendants in the amount of $473,747.24.

Respondents answered, asserting counterclaims against Wachovia, cross-claims against the South Island Plantation Association, Incorporated (the Homeowners' Association), and a third-party complaint against the Seller and the Realtors. At issue here are the counterclaims against Wachovia, which include claims for negligent misrepresentation, promissory estoppel, breach of contract/breach of contract accompanied by a fraudulent act, breach of fiduciary duty, fraud/fraud in the inducement, breach of contract/negligence, breach of contract, civil conspiracy, illegality of contract, and violations of the South Carolina Unfair Trade Practices Act (the SCUTPA).[4]

The gravamen of the counterclaims was that Wachovia "was an agent of, partner of, joint venture [sic] with, or conspirator with" the Seller and the Realtors such that the allegedly wrongful actions of the Seller and the Realtors were "imputed to" Wachovia. According to Respondents, Wachovia, the Seller, and the Realtors "artificially inflated [property values] through collusion by the parties" and promised that various amenities would be in place within eighteen months of the lottery. Respondents contended that the amenities were not completed in a timely manner as promised, and that they were damaged by the delays.[5] Respondents demanded a jury trial on their counterclaims, requesting monetary damages and

---

4. As to the cross-claims and third-party complaint, the circuit court found that, because Respondents chose to raise those claims in a nonjury foreclosure proceeding, they had waived any right to a jury trial on those claims. Respondents did not appeal this ruling.

5. According to Respondents, the amenities were in place as of the spring of 2008; however, Respondents did not miss a payment until July 2008.

rescission of the sales and loan contracts as a remedy for their claims.

Wachovia moved to strike the jury demand and refer the entire matter to the master-in-equity, arguing that Respondents contractually waived their right to a jury trial by executing the note and guaranties, all of which included the jury trial waivers. The circuit court granted Wachovia's motion, holding that the language of the waivers in the loan documents encompassed Respondents' counterclaims, and that Respondents knowingly and voluntarily waived their right to a jury trial through the clear and unambiguous waivers.[6]

Respondents appealed, arguing, *inter alia*, that (1) their jury trial waivers were not knowingly and voluntarily entered into and that (2) South Carolina's so-called "outrageous and unforeseeable torts exception" to arbitration agreements applied to jury trial waivers as well, thus determining whether the sales transaction was "significantly related" to the loan transactions, and whether the counterclaims fell within the scope of the contractual jury trial waiver provisions.

The court of appeals affirmed in part and reversed in part. *Wachovia Bank, N.A. v. Blackburn*, 394 S.C. 579, 590, 716 S.E.2d 454, 460 (Ct.App.2011). It held that, although the circuit court correctly found that the waivers were knowing and voluntary, the outrageous and unforeseeable torts exception was "instructive" in determining that the counterclaims were not significantly related to the loan transactions. *Id.* at 584–90, 590 n. 9, 716 S.E.2d at 457–60, 460 n. 9. Further, the court of appeals found that the counterclaims involved only the sales transaction, and the jury trial waivers only applied to the loan transactions. *Id.* at 588–90, 716 S.E.2d at 459–60. Therefore, the court of appeals found that Respondents' counterclaims were outside the scope of the jury trial waivers and,

---

6. Respondents also argued that the waivers were unconscionable and that the circuit court could order a jury trial in its discretion pursuant to Rule 39(b), SCRCP. However, the circuit court did not rule on these issues in its order, and there is no indication in the Appendix that Respondents ever filed a motion to reconsider prior to their initial appeal to the court of appeals. *See* Rule 59, SCRCP. As such, these issues are not preserved, and we will not address them further. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693–94 (2003).

thus, Respondents were entitled to a jury trial on those claims. *Id.* This appeal followed.

## ISSUES

I. Whether the circuit court and court of appeals applied the correct law regarding counterclaims brought in response to an equitable action?

II. Whether the jury trial waivers were knowingly and voluntarily executed by Respondents?

## STANDARD OF REVIEW

"A mortgage foreclosure is an action in equity." *Hayne Fed. Credit Union v. Bailey*, 327 S.C. 242, 248, 489 S.E.2d 472, 475 (1997). In an appeal from an action in equity tried by a judge, appellate courts may find facts in accordance with their own views of the preponderance of the evidence. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775–76 (1976). However, "[w]hether a party is entitled to a jury trial is a question of law." *Verenes v. Alvanos*, 387 S.C. 11, 15, 690 S.E.2d 771, 772 (2010). Appellate courts may decide questions of law with no particular deference to the circuit court's findings. *Id.* at 15, 690 S.E.2d at 772–73.

## ANALYSIS

### I. Counterclaims in an Equitable Action

Wachovia's foreclosure action is an action in equity. *Hayne Fed. Credit Union*, 327 S.C. at 248, 489 S.E.2d at 475. "In equity the parties are not entitled, as a matter of right, to a trial by jury." *Williford v. Downs*, 265 S.C. 319, 321, 218 S.E.2d 242, 243 (1975). However, counterclaims—including those raised in equitable actions—may, at times, be entitled to a jury trial. As we have previously explained:

(1) If both the complaint and the counterclaim are in equity, the entire matter is triable by the court.

(2) If both are at law, the issues are triable by a jury.

(3) If the complaint is equitable and the counterclaim is legal and permissive, the defendant waives his right to a jury trial.

(4) If the complaint is equitable and the counterclaim is legal and compulsory, the plaintiff or the defendant has a right to a jury trial on the counterclaim. In that case, the proper procedure is as follows:

(a) The trial judge may, pursuant to Rule 42(b), order separate trials of the legal and equitable claims, or may order the claims tried in a single proceeding.

(b) If separate trials are ordered, the judge must determine which issues are to be tried first. If there are factual issues common to both claims, absent the most imperative circumstances, the at law claim must be tried first. If there are no common factual issues, it is within the trial judge's discretion which claim will be tried first.

(c) If the claims are to be tried in a single proceeding and there are factual issues common to both claims, the jury shall first determine the legal issues. The court may then determine the equitable claims, but the jury's determination of common factual issues shall be binding upon the court.

*Johnson v. S.C. Nat'l Bank (Johnson II)*, 292 S.C. 51, 55–56, 354 S.E.2d 895, 897 (1987) (citation omitted) (internal quotation marks omitted), *modifying C & S Real Estate Servs., Inc. v. Massengale*, 290 S.C. 299, 301–02, 350 S.E.2d 191, 193 (1986); *see also N.C. Fed. Sav. & Loan Ass'n v. DAV Corp.*, 298 S.C. 514, 517, 381 S.E.2d 903, 905 (1989) (utilizing the same rules as *Massengale* and *Johnson II*, but focusing on the difference between permissive and compulsory counterclaims).

 Because the issue of jury trial waivers has not arisen in subsequent cases involving this analytical framework, we have not had the opportunity to address where such waivers might fit into the framework. We take the opportunity now to modify the proper analysis for determining the trial of legal and equitable issues in complaints and counterclaims.

(1) If both the complaint and the counterclaim are in equity, the entire matter is triable by the court.

(2) If both are at law, the issues are triable by a jury.

(3) If the complaint is equitable and the counterclaim is legal and permissive, the defendant waives his right to a jury trial.

(4) If the complaint is equitable and the counterclaim is legal and compulsory, the plaintiff or the defendant has a right to a jury trial on the counterclaim unless a valid jury trial waiver exists that encompasses the counterclaim. If such a waiver does not exist, the proper procedure for handling the counterclaims is as follows:

 (a) The trial judge may, pursuant to Rule 42(b), order separate trials of the legal and equitable claims, or may order the claims tried in a single proceeding.

 (b) If separate trials are ordered, the judge must determine which issues are to be tried first. If there are factual issues common to both claims, absent the most imperative circumstances, the at law claim must be tried first. If there are no common factual issues, it is within the trial judge's discretion which claim will be tried first.

 (c) If the claims are to be tried in a single proceeding and there are factual issues common to both claims, the jury shall first determine the legal issues. The court may then determine the equitable claims, but the jury's determination of common factual issues shall be binding upon the court.

As will be discussed, *infra*, this case is unusual in that the dispositive issue is whether the claims are permissive or compulsory; therefore, we address that issue first.

 " 'By definition, a counterclaim is compulsory only if it arises out of the same transaction or occurrence as the opposing party's claim.' " *Wells Fargo Bank, N.A. v. Smith*, 398 S.C. 487, 495, 730 S.E.2d 328, 332–33 (Ct.App.2012) (quoting *First–Citizens Bank & Trust Co. of S.C. v. Hucks*, 305 S.C. 296, 298, 408 S.E.2d 222, 223 (1991)); *see also* Rule 13(a), SCRCP.[7] Claims that arise out of separate transactions or

---

7. We have previously adopted the "logical relationship" test to determine whether a counterclaim is compulsory under this definition. *N.C. Fed. Sav. & Loan Ass'n*, 298 S.C. at 518, 381 S.E.2d at 905. Under this test, "the 'logical relationship' determination is made by asking whether

occurrences than the subject matter of the opposing party's claims are, instead, permissive. Rule 13(b), SCRCP.

 Respondents argued consistently throughout the litigation that the sales and loan transactions were *separate transactions*, and that the wrongs done to them were related solely to various torts committed in the sales transaction. They therefore asserted that the jury trial waivers found in the loan documents—which applied to "any course of conduct, course of dealing, statements (whether verbal or written) or actions of any party" involving the note or the guaranties— only applied to torts committed during the loan transactions, but not to those committed during the sales transaction. Thus, Respondents claimed that the jury trial waivers they executed in connection with the loan documents did not bar their counterclaims related to the sales transaction. However, Respondents simultaneously argued that their counterclaims were *compulsory*, *i.e.*, that they arose out of the same transaction or occurrence as Wachovia's loan foreclosure action.

We find it unnecessary to determine whether the claims were permissive or compulsory because, in either event, Respondents are not entitled to a jury trial. For example, if we found that, as Respondents contended, the sales transaction was separate from the loan transactions, then by definition the counterclaims would be permissive. Wachovia's action is a foreclosure action centered entirely on obligations created by the loan documents. If the sale was separate from the loan, then the counterclaims involving the sale did not "aris[e] out of the transaction or occurrence that is the subject matter of the

---

the counterclaim would affect the lender's right to enforce the note and foreclose the mortgage." *Wells Fargo Bank*, 398 S.C. at 496, 730 S.E.2d at 333; *see also N.C. Fed. Sav. & Loan Ass'n*, 298 S.C. at 518–19, 381 S.E.2d at 905. If the defendant's prevailing on his counterclaim would affect the bank's right to enforce the note and foreclose the mortgage, there is a logical relationship between the counterclaim and the underlying suit, and the counterclaim is therefore compulsory. *N.C. Fed. Sav. & Loan Ass'n*, 298 S.C. at 518–19, 381 S.E.2d at 905 (finding counterclaims involving breach of an oral agreement purporting to modify a note that the bank was foreclosing on were logically related to the enforceability of the note and thus were compulsory); *Wells Fargo Bank*, 398 S.C. at 496, 730 S.E.2d at 333 (determining a counterclaim alleging a note was unconscionable was logically related to the enforceability of the note and thus was compulsory).

opposing party's claim." Rule 13(b), SCRCP. Therefore, because Respondents raised such permissive counterclaims in an equitable action, they waived their right to a jury trial on the claims. *See Johnson II*, 292 S.C. at 55, 354 S.E.2d at 897.

On the other hand, if we found that the sales and loan transactions were all one continuous transaction or occurrence such that the counterclaims could possibly be considered compulsory under Rule 13(a), SCRCP, the jury trial waivers necessarily apply. Respondents waived their right to a jury trial for any claim related to "any course of conduct, course of dealing, statements (whether verbal or written) or actions of any party" involving the loan documents. Therefore, if we view the sales and loan transaction as one continuous transaction, the sales transaction falls squarely within the coverage of the waiver provisions.

Accordingly, as stated, *supra*, whether the counterclaims were legal or equitable makes no difference *in this instance*. To the extent any of Respondents' counterclaims were equitable in nature, they did not have a right to a jury trial on those claims. *Id.* To the extent any of Respondents' counterclaims were legal—regardless of whether the claims were permissive or compulsory—Respondents waived their right to a jury trial, either through the waiver provisions or because they raised their permissive claims in an equitable action. Respondents may only avoid this result if the contractual jury trial waivers executed in connection with the loan documents are invalid and unenforceable. Therefore, we turn next to that issue.

## II. Knowing and Voluntary Waivers

Both the court of appeals and the circuit court found that the jury trial waivers were enforceable because Respondents executed them knowingly and voluntarily. We agree and find the waivers enforceable.

 "A party may waive the right to a jury trial by contract." *Beach Co. v. Twillman, Ltd.*, 351 S.C. 56, 63, 566 S.E.2d 863, 866 (Ct.App.2002) (citing *N. Charleston Joint Venture v. Kitchens of Island Fudge Shoppe, Inc.*, 307 S.C. 533, 535, 416 S.E.2d 637, 638 (1992)). However, although the right to a trial by jury is a substantial right, and we "strictly construe" such waivers, *id.* at 64, 566 S.E.2d at 866, "[a]

person who signs a contract or other written document cannot avoid the effect of the document by claiming that he did not read it." *Regions Bank v. Schmauch,* 354 S.C. 648, 663, 582 S.E.2d 432, 440 (Ct.App.2003) (citing *Sims v. Tyler,* 276 S.C. 640, 643, 281 S.E.2d 229, 230 (1981); *Evans v. State Farm Mut. Auto. Ins. Co.,* 269 S.C. 584, 587, 239 S.E.2d 76, 77 (1977)). Instead, when a person signs a document, he is responsible for exercising reasonable care to protect himself by reading the document and making sure of its contents. *Id.* at 663–64, 582 S.E.2d at 440 (citing several of this Court's cases). "The law does not impose a duty on the bank to explain to an individual what he could learn from simply reading the document." *Id.* at 664, 582 S.E.2d at 440 (citing *Citizens & S. Nat'l Bank of S.C. v. Lanford,* 313 S.C. 540, 545, 443 S.E.2d 549, 551 (1994)).

By signing the note and guaranty, Respondents are charged with having read their contents; therefore, although they assert via affidavit that they were "not aware of any jury trial waiver clause until the motion to strike [their] request for jury trial was made by" Wachovia, they cannot avoid the effects of the waivers merely by arguing that they were unaware that such provisions were included in the note and guaranty.[8] *See Regions Bank,* 354 S.C. at 663, 582 S.E.2d at 440. We therefore find the waivers enforceable and applicable to any of Respondents' counterclaims that are legal and compulsory.

## CONCLUSION

For the foregoing reasons, the judgment of the court of appeals is affirmed in part and reversed in part. We affirm the portion of the judgment finding that the waivers were executed knowingly and voluntarily; however, we reverse the portion finding that the outrageous and unforeseeable torts exception to arbitration applies in the jury trial waiver con-

---

8. Further, the waivers here are conspicuous and unambiguous. Unlike the other provisions in the note and guaranties, the waivers are printed in all capital letters and have a bold heading called **"WAIVER OF JURY TRIAL."** They are located at the very end of the six-page document, directly above the signature line, thus making the conspicuous font even more noticeable, even at a quick glance.

text, and find instead that Respondents waived their right to a jury trial on all of their counterclaims.

PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.