**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Penland Automotive, LLC, and Charles W. Penland, Jr., Respondents,

v.

Dealer Financial Holdings, LLC, Steve Lanzl, and Daniel B. Haight, Appellants.

Appellate Case No. 2023-001053

———————

Appeal From Greenville County
J. Derham Cole, Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-021
Heard November 5, 2025 – Filed January 21, 2026

———————

**AFFIRMED**

———————

Robert Hope Jordan, of Parker Poe Adams & Bernstein, LLP, of Charleston, and Emily Irene Bridges, of Parker Poe Adams & Bernstein, LLP, of Greenville, both for Appellants.

Jason Michael Imhoff, of Imhoff Law Firm, of Greenville, for Respondents.

———————

**PER CURIAM:** Appellants Dealer Financial Holdings, LLC; Daniel B. Haight; and Steve Lanzl (collectively, Dealer Financial) appeal the circuit court's order denying their motion to strike Respondents' jury demand. Appellants argue the circuit court erred by finding that Respondents Penland Automotive, LLC and Charles W. Penland, Jr. (collectively, Penland) did not waive their right to a jury trial in a 2016 financing agreement. We affirm.

## FACTS AND PROCEDURAL HISTORY

Appellants Daniel B. Haight and Steve Lanzl are, respectively, the president and chief operating officer of Dealer Financial Holdings, LLC (Dealer Financial Holdings), a financing company that offers floor-plan financing[1] to car dealerships. Respondent Charles W. Penland, Jr. (Mr. Penland) is the sole owner of Penland Automotive, LLC (Penland Automotive), a used car dealership.[2]

On November 21, 2016, Penland and Penland Properties II, LLC entered into a written loan and security agreement with Dealer Financial Holdings (the 2016 Agreement). Under this agreement, Dealer Financial Holdings provided floor-plan financing to Penland Automotive in the form of cash advances. Section 17 of the 2016 Agreement addressed Penland's and Dealer Financial Holdings' rights to a jury trial:

> TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH GRANTOR AND [DEALER FINANCIAL HOLDINGS] HEREBY . . . *WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT, ANY RELATED AGREEMENT, THE LIABILITIES, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH, AND ANY AND ALL CAUSES OF ACTION IN ANY WAY RELATING TO ANY MATTER BETWEEN THEM WHETHER ARISING FROM OR RELATING TO THIS AGREEMENT OR ANY RELATED AGREEMENT, OR ARISING FROM*

---

[1] Floor-plan financing is a line of credit extended to car dealerships to purchase vehicles or equipment and is usually paid back as the dealership sells its inventory. *See Floor-Plan Financing, Black's Law Dictionary* (12th ed. 2024).
[2] Mr. Penland is also the sole owner of Penland Properties II, LLC.

*ALLEGED EXTRA-CONTRACTUAL FACTS PRIOR TO, DURING, OR SUBSEQUENT TO THIS AGREEMENT AND REGARDLESS OF THE LEGAL THEORY UPON WHICH SUCH MATTER IS ASSERTED . . . .*

(emphasis added). Additionally, Mr. Penland signed a demand note on behalf of Penland Automotive and individually signed a guaranty; both documents noted that Dealer Financial Holdings was or would continue making future advances to Penland Automotive, indicated that the 2016 Agreement defined any terms incorporated in but not defined in the documents, and included jury trial waiver provisions identical to the provision in the 2016 Agreement.

The parties maintained their floor-plan financing arrangement under the 2016 Agreement for approximately three years.[3] On February 20, 2019, Penland Automotive told Dealer Financial Holdings that it no longer needed Dealer Financial Holdings' services and to "close and deactivate [the] floor[]plan" associated with the 2016 Agreement. Dealer Financial Holdings subsequently closed Penland Automotive's account.

In June 2020, Penland was in search of a new floor-plan financing company due to financial constraints caused by the COVID-19 pandemic. Penland found that Upstate Auto Auction (Upstate Auto) did not charge the same fees and costs as Dealer Financial Holdings but before it would enter a contract with Penland, Upstate Auto required Penland Automotive to remove an outstanding lien[4] held by Dealer Financial Holdings. Dealer Financial Holdings did not remove the lien; instead, Penland and Dealer Financial began negotiating to renew their floor-plan financing arrangement.

In a July 6, 2020 letter, Appellant Daniel B. Haight informed Penland that a new floor-plan financing agreement would be prepared and available for Penland Automotive and Dealer Financial Holdings to sign, but the companies never signed

---

[3] The parties also altered the terms of the 2016 Agreement, either by email or written agreement, but none of the amendments concerned the jury trial waiver provision.
[4] Upstate Auto was concerned that the lien would give Dealer Financial Holdings priority over Upstate Auto interest's in Penland's floor plan if Upstate Auto entered into a contract with Penland.

a new written financing agreement.[5]  Penland expected the terms of the new agreement to be identical to Upstate Auto's proposed terms, which Penland alleged Dealer Financial Holdings promised to incorporate in the new agreement.  Though the parties did not execute a new written agreement, it is not disputed that Dealer Financial Holdings resumed advancing money to Penland Automotive to purchase vehicles and make loan payments back to Dealer Financial Holdings.

In an October 8, 2020 letter, Haight notified Penland that due to a change in Penland Automotive's management structure, Dealer Financial Holdings was accelerating repayment and demanding immediate payment of the remaining loan balance, referencing Penland's payment obligations *under the 2016 Agreement*.  The parties disagreed on whether the 2016 Agreement governed the advances Dealer Financial Holdings made after they renewed their financing arrangement in 2020; Penland eventually filed this action against Dealer Financial.  In its complaint, Penland requested a jury trial and raised the following causes of action: (1) breach of covenant of good faith and fair dealing; (2) unfair trade practices; (3) conversion; (4) breach of verbal contract; (5) recission of verbal contract; (6) fraudulent inducement to enter a contract; (7) negligent misrepresentation; and (8) defamation per se.

Dealer Financial filed a motion to strike Penland's jury demand, arguing that the jury trial waiver provision in the 2016 Agreement applied to all of Penland's causes of action, and Penland subsequently filed a motion for partial summary judgment that the 2016 Agreement did not govern the purported 2020 financing arrangement.  The circuit court, finding that a "genuine issue of material fact exist[ed] relating to the continued applicability of the 2016 [l]oan [d]ocuments to the reopened floor-plan financing relationship in 2020," denied both motions without prejudice and with leave to renew the motions.

On September 28, 2022, Dealer Financial renewed its motion to strike Penland's jury demand.  The circuit court found that Penland "[did] not waive[] its right to a trial by jury" and denied the motion by Form 4 order.  This appeal followed.

**ISSUE ON APPEAL**

---

[5] Though the July 6, 2020 letter included proposed terms, conditions, and guidelines for the new floor-plan financing arrangement, none of the documentation referenced the 2016 Agreement.

Did the circuit court err by finding that the 2016 Agreement did not waive Penland's right to a jury trial in this case.

## STANDARD OF REVIEW

"If a contract's language is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and its language determines the instrument's force and effect." *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 499, 649 S.E.2d 494, 502 (Ct. App. 2007). While jury trial waivers are strictly construed, they are nevertheless construed according to their "plain, ordinary and popular meaning." *Beach Co. v. Twillman, Ltd.*, 351 S.C. 56, 64, 566 S.E.2d 863, 866 (Ct. App. 2002), *abrogated on other grounds by Deutsche Bank Nat'l Tr. Co. v. Est. of Houck*, 440 S.C. 409, 412-13, 892 S.E.2d 280, 281-82 (2023).

## LAW AND ANALYSIS

Dealer Financial argues that the jury trial waiver provision in the 2016 Agreement applies to all of Penland's causes of action. We disagree.

In South Carolina, "[a] party may waive the right to a jury trial by contract." *Skywaves I Corp. v. Branch Banking & Tr. Co.*, 423 S.C. 432, 449, 814 S.E.2d 643, 652 (Ct. App. 2018) (alteration in original) (quoting *Wachovia Bank, Nat'l Ass'n v. Blackburn*, 407 S.C. 321, 332, 755 S.E.2d 437, 443 (2014), *abrogated on other grounds by Deutsche Bank Nat'l Tr. Co.*, 440 S.C. at 412-13, 892 S.E.2d at 281-82). "The right of trial by jury is highly favored, and waivers of the right are always strictly construed and not lightly inferred or extended by implication." *Keels v. Pierce*, 315 S.C. 339, 342, 433 S.E.2d 902, 904 (Ct. App. 1993); *see also Wachovia Bank*, 407 S.C. at 325-27, 755 S.E.2d at 439-40 (finding, in a bank's foreclosure action for failure to make payments under a note, a jury trial waiver provision was enforceable against borrowers' counterclaims when the note and corresponding guaranty waived borrowers' right to a jury trial in "any litigation based on . . . or in connection with [the] note"); *Beach Co.*, 351 S.C. at 63-64, 566 S.E.2d at 866 (finding, in a landlord's eviction action for a tenant's failure to pay rent, a jury trial waiver provision was enforceable against the tenant's counterclaims when the lease waived the right to a jury trial in any summary proceeding for nonpayment of rent brought by the landlord and *any counterclaims brought by the tenant*). "In absence of an express agreement or consent, a waiver of the right to a jury trial will not be presumed." *Keels*, 315 S.C. at 342, 433 S.E.2d at 904.

Here, the jury trial waiver provision in the 2016 Agreement applied to claims brought by either side "regardless of the legal theory" asserted under each claim. Nevertheless, the provision only applied if such claims fell into the following categories: (1) claims in connection with, arising from, or related to the *2016 Agreement*; (2) claims in connection with, arising from, or related to *any agreements related to the 2016 Agreement*; and (3) claims in connection with, arising from, or related to any *alleged extra-contractual facts* before, during, or after the parties executed the 2016 Agreement.

It is undisputed that in November 2016 the parties entered into an agreement containing a jury trial waiver provision. It is also undisputed that around the time the parties executed the 2016 Agreement, Mr. Penland signed a demand note and guaranty, both of which referenced—and contained jury trial waiver provisions identical to—the 2016 Agreement. Thus, the plain language of the jury trial waiver provision would apply to claims concerning the 2016 Agreement and corresponding demand note and guaranty. However, by closing Penland Automotive's floor-plan account associated with the 2016 Agreement upon Penland Automotive's request in 2019, the parties effectively ended their financing arrangement and terminated the 2016 Agreement.

It is also undisputed that the parties intended to resume a floor-plan financing arrangement in 2020; Dealer Financial Holdings resumed advancing funds to Penland Automotive, and Penland Automotive used the funds and made payments back to Dealer Financial Holdings. Regardless, nothing in the record indicates that all parties intended to carry all the terms of the 2016 Agreement, including the jury trial waiver provision, over to the 2020 financing arrangement between the parties. Haight provided Penland with proposed terms, conditions, and guidelines for the new arrangement, but none of the documentation Haight provided referenced the 2016 Agreement. Additionally, Penland alleges that Dealer Financial Holdings promised the written contract for the 2020 arrangement would contain the same terms offered by Upstate Auto, and nothing in the record shows that Upstate Auto's terms included a jury trial waiver provision. Further, Penland's causes of action revolve around either the *inherent disagreements* between the parties as to the governing terms of the purported arrangement or the parties' *conduct* following such disagreements.

Due to the lack of evidence supporting a conclusion that the parties integrated the terms of the 2016 Agreement into the 2020 financing arrangement, we hold Penland's claims are not in connection with, arising from, or related to the 2016 Agreement, the demand note, nor the guaranty. Further, we hold Penland's causes

of action in its complaint, which involve disagreements regarding the 2020 arrangement between the parties and their conduct following those disagreements, do not concern extra-contractual facts surrounding the 2016 Agreement. Thus, the circuit court's order is

**AFFIRMED.**

**KONDUROS, GEATHERS, and VINSON, JJ., concur.**