0828

NOACK ENTERPRISES, INC., d/b/a Country Corner Interiors, Appellant
v. COUNTRY CORNER INTERIORS OF HILTON HEAD ISLAND,
INC., Howard Lipton and Jon Dellaria, Jr., Respondents.

(351 S. E. (2d) 347)

Court of Appeals

*Phillip C. Lyman,* of *Lyman and Howell,* Hilton Head
Island, *for appellant.*

*Frank F. Pape, Jr.*, Hilton Head Island, *for respondents.*

Heard Oct. 14, 1986.

Decided Dec. 8, 1986.

GOOLSBY, Judge:

This is an action brought by the appellant Noack Enterprises, Inc., for breach of contract accommpanied by fraudulent acts and with fraudulent intent and for violation of the South Carolina Unfair Trade Practices Act (UTPA), against the respondent Country Corner Interiors of Hilton Head Island, Inc., and its secretary and president, the respondents Howard Lipton and Jon Dellaria, Jr. The hearing judge sustained the respondents' demurrer to the UTPA cause of action. The principal issue raised by Noack Enterprises in its appeal is whether the employment of the respondents of allegedly unfair or deceptive practices in their sale of a retail business to Noack Enterprises is actionable under the UTPA. We affirm.

On May 17, 1984, Lipton and Dellaria, individually and as secretary and president of Country Corner, respectively, entered into an agreement with Noack Enterprises to sell the latter all the assets of Country Corner, an interior decorating business.

Eight months later, Noack Enterprises commenced this action alleging two causes of action in its complaint. Its second cause of action alleged that the respondents in violation of the UTPA used unfair or deceptive practices in the sale of the business.

The respondents demurred to the UTPA cause of action on the ground that it failed to state facts sufficient to constitute a cause of action under the UTPA.

The hearing judge sustained the demurrer. Noack Enterprises contends this was error.

The UTPA is found in Sections 39-5-10 *et seq.* of the South Carolina Code of Laws (1976). Under Section 39-5-20(a), "unfair or deceptive acts or practices in the conduct of any trade or commerce are ... declared unlawful." The terms "trade" and "commerce" are defined by Section 39-6-10(b) to "include the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible,

real, personal or mixed, and any other article, commodity or thing of value wherever situate, and [to] include any trade or commerce directly or indirectly affecting the people of this State."

Section 39-5-140(a) creates a private right of action in favor of "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20. . . ." A person is defined by Section 39-5-10 to include, among others, "natural persons" and "corporations." Treble damages are recoverable under Section 39-5-140 where "the use or employment of the unfair or deceptive . . . act or practice was a willful or knowing violation of § 39-5-20."

As we determine the principal issue presented by Noack Enterprises, we are mindful that other states have acts proscribing unfair and deceptive trade practices. Unfortunately, our research has not shown that any state has an unfair trade practices act identical to our own.

In any case, the determination of the issue here depends on how we interpret the language of this state's act. In interpreting the act before us, we are required to ascertain and give effect to the intention of the legislature if possible [*South Carolina Department of Social Services v. Forrester*, 282 S. C. 512, 320 S. E. (2d) 39 (Ct. App. 1984)] and to construe the language of the act in light of the act's intended purpose. *Squires v. South Carolina Law Enforcement Division*, 249 S. C. 609, 155 S. E. (2d) 859 (1967).

The legislature intended in enacting the UTPA to control and eliminate "the large scale use of unfair and deceptive trade practices within the state of South Carolina." Note, *Consumer Protection and the Proposed "South Carolina Unfair Trade Practices Act,"* 22 S.C.L.REV. 767, 787 (1970); see Day, *The South Carolina Unfair Trade Practices Act; Sleeping Giant or Illusive Panacea?* 33 S.C.L.REV. 479 (1982). To this end, the act authorizes the Attorney General to bring an action in the name of the State to enjoin unfair or deceptive acts or practices in the conduct of any trade or commerce when to do so "would be in the public interest." S. C. Code of Laws § 39-5-50 (1976); see *Id.* § 39-5-70(a) (Attorney General may execute and serve an investigative de-

mand "when he believes it to be in the public interest[ ] that an investigation should be made ...."). The requirement of Section 39-5-140(b) that the clerk of court notify the Attorney General of any action brought by a private party pursuant to Section 39-5-140(a) indicates that the private cause of action created by the latter section was intended by the legislature to serve the same objective and to be similarly restricted in scope.

The legislature's intent to limit the application of the UTPA to only those unfair or deceptive acts or practices in the conduct of trade or commerce that affect the public interest is made even more clear when one considers the language used by Section 39-5-10 in defining the terms "trade" and "commerce," particularly, the language "and shall include any trade or commerce directly or indirectly affecting the people of this State." This language reflects the legislature's intent than an unfair or deceptive act or practice in the conduct of any trade or commerce injuriously affect "the people of this State," *i.e.*, the public interest, before it can be actionable under the UTPA.*See Butterfield v. Butler*, 50 Okla. 381, 150 P. 1078 (1915) (the word "affect" is often used in the sense of acting injuriously upon persons and things). Without this language, "any advertising, offering for sale, sale or distribution of any services and any property ... and any other article, commodity or thing of value," if unfair or deceptive, would be actionable under the act irrespective of whether it affects the public interest.

A contrary construction would mean, for example, that a person selling his home to another individual would be subject to the UTPA and its provisions for treble damages if the seller willfully committed an unfair act when he sold the home and the buyer suffered "an ascertainable loss of money or property ... as a result." *See* S. C. Code of Laws § 39-5-140 (1976); *Rosenthal v. Perkins*, 42 N. C. App. 449, 257 S. E. (2d) 63 (1979) (North Carolina UTPA held not violated by homeowners selling their residence).

In our view, the obvious purpose of the language ■ "shall include any trade or commerce directly or indirectly affecting the people of this State," then, is to circumscribe the kind of trade or commerce in the conduct of which an unfair or deceptive act or practice can serve as a

basis for a UTPA action. An unfair or deceptive act or practice that affects only the parties to a trade or a commercial transaction is beyond the act's embrace and we so hold. *See Zeeman v. Black*, 156 Ga. App. 82, 273 S. E. (2d) 910 (1980) (purchasers of a home from a private homeowner held not to have a cause of action under the Georgia Fair Business Practice Act because the sale was an isolated act of an individual and not a transaction potentially harmful to the consumer public); *Evanston Motor Company, Inc. v. Mid-Southern Toyota Distributors, Inc.*, 436 F. Supp. 1370, 1374 (N.D.Ill. 1977) (the Illinois Unfair Trade Practices Act held "not available to redress a purely private wrong."). To be actionable under the UTPA, therefore, the unfair or deceptive act or practice in the conduct of trade or commerce must have an impact upon the public interest. The act is not available to redress a private wrong where the public interest is unaffected.

This conclusion is consistent with the legislature's intent, expressly stated in Section 39-5-50, that in determining whether an unfair or deceptive act or practice in the conduct of any trade or commerce is unlawful, and thus actionable under the UTPA, "the courts . . . be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to § 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1))." Before the Commission can issue and serve a complaint where it has reason to believe that a party "has been or is using any . . . unfair or deceptive act or practice in or affecting commerce," it must appear to the Commission that "a proceeding by it in respect thereof would be to the interest of the public." 15 U.S.C. § 45(b). *Zeeman v. Black, supra.* Because the federal act prescribes a public interest requirement as a condition to enforcement, our act, to comport with the legislature's intent, must be construed to contain a public interest requirement also.

With these considerations in mind, we turn to the allegations of the complaint to determine whether the allegedly unfair or deceptive acts or practices have an impact upon the public interest. The allegedly unfair or deceptive acts or practices consisted of the respondents' (1) accepting payment from Noack Enterprises for all carpet reflected on purchase orders and then fraudulently converting a credit

for unshipped carpet to their own use and benefit, (2) falsely representing that Noack Enterprises would receive all the carpet reflected on certain purchase orders when they knew one roll of carpet had been installed elsewhere, (3) falsely representing that lists of contracts provided to Noack Enterprises for work in process were complete and accurate when they knew there were other contracts and lists significantly understated the deposits the respondents had already received, (4) falsely representing that they would pay pre-closing expenses and then intentionally failing to pay claims and judgments of former employees and failing to pay Country Corner's employees through the payday that fell on the day of closing, (5) falsely representing that they would protect Country Corner's name, reputation, and good will and then issuing worthless checks and otherwise depleting the corporation's checking account, (6) falsely stating that all creditors were disclosed in a list provided Noack Enterprises when they knew of the claims of former employees, and (7) falsely representing that they would provide information to Noack Enterprises for up to one year following closing ahd then refusing to do so.

While these allegedly unfair or deceptive acts or practices allegedly damaged Noack Enterprises, the complaint nowhere alleges any facts demonstrating that these acts or practices adversely affect the public. *See Evanston Motor Company, Inc. v. Mid-Southern Toyota Distributors, Inc.*, 436 F. Supp. at 1374 (where the court dismissed a claim under the Illinois Unfair Trade Practices Act because the plaintiff gave "no indication that the defendants' alleged practices have had or will have an adverse effect upon the 'public.' ").

We agree with the Washington Supreme Court, sitting *en banc*, that unfair or deceptive acts or practices in the conduct of trade or commerce have an impact upon the public interest if the acts or practices have the potential for repetition. *Anhold v. Daniels*, 94 Wash. (2d) 40, 614 P. (2d) 184 (1980). Here, however, there are no allegations in the complaint that suggest that any of the unfair acts or deceptive practices allegedly employed by the respondents in their sale of the business might possibly recur.

In reaching our conclusion, we are aware of *Lynn v. Nashawaty*, 12 Mass. App. 310, 423 N. E. (2d) 1052 (1981),

wherein the Appeals Court of Massachusetts held that an unfair or deceptive act or practice employed by the seller of a retail business in connection with the sale was actionable under the Massachusetts Regulation of Business Practice and Consumer Protection Act. We do not find *Lynn* persuasive or even helpful. Massachusetts does not require that an unfair or deceptive act or practice in the conduct of any trade or commerce also affect the public interest to be actionable. It simply requires that a transaction take place within a business context. *See Begelfer v. Najarian,* 381 Mass. 177, 409 N. E. (2d) 167 (1980). Also, the defendant in *Lynn,* unlike the respondents here, had participated in two prior sales of stores.

Regarding Noack Enterprises' contention that the question as to the scope of the UTPA is a question of novel impression that should not be decided on a demurrer, we recognize that ordinarily questions of novel impression should not be so decided. This rule, however, only applies either where there is real cause for doubt and it is necessary that the evidence be fully developed or where it is clear that the ends of justice would be promoted by a trial on the merits. *See Springfield v. Williams Plumbing Supply Co.,* 249 S. C. 130, 153 S. E. (2d) 184 (1967).

Here, there is no need to develop the facts further. Even accepting all the well pleaded facts as true, as we are required to do on a demurrer, Noack Enterprises has simply not alleged, as we noted above, any facts showing that the allegedly unfair or deceptive practices employed by the respondents in the sale of the retail business to Noack Enterprises either directly or indirectly affect "the people of this State."

Affirmed.

BELL and CURETON, JJ., concur.