KONDUROS, J.:
*647 This cross-appeal arises out of a suit brought by Skywaves I Corporation (Skywaves) against Branch Banking and Trust Company (BB&T) and James Edahl. Skywaves brought suit against BB&T for breach of contract and breach of contract accompanied by fraudulent acts and against both BB&T and Edahl for negligent misrepresentation, negligence, and violation of the South Carolina Unfair Trade Practices Act (SCUTPA).[1] Skywaves appeals the circuit court's orders (1) granting BB&T's and Edahl's motions to strike its demand for a jury trial, (2) granting summary judgment to BB&T and Edahl as to its claims for negligence and negligent misrepresentation, (3) dismissing its SCUTPA claim, and (4) denying its motion to strike BB&T's and Edahl's answers. BB&T appeals the circuit court's order denying it summary judgment as to Skywaves' claims for breach of contract and breach of contract accompanied by fraudulent acts. We affirm in part, reverse in part, and dismiss in part.
FACTS/PROCEDURAL HISTORY
Skywaves is a South Carolina corporation that develops technology for the wireless telecommunications industry; specifically, Skywaves manufactures structures for sheltering equipment at the base of cell phone towers. Ronald Konersmann, a businessman who has been involved with manufacturing infrastructure for the telecommunications industry since 1982, is Skywaves' founder and Chief Executive Officer (CEO), and John Voytko, a licensed certified professional accountant, is Skywaves' Chief Financial Officer (CFO). BB&T is a banking institution with branches in several states including North and South Carolina. Edahl is a resident of South Carolina and was an officer at BB&T at the time of the events leading to the action.
On March 22, 2005, Skywaves entered into a factoring agreement (the Agreement) with BB&T.[2] Under the Agreement, BB&T agreed to purchase Skywaves' accounts receivable for eighty percent of the face value of the invoice up to a maximum of $1.5 million. Once Skywaves sold a receivable to BB&T, BB&T became vested with all of Skywaves' rights in the account, including the right to payment. Every factored invoice was required to "state plainly on the face thereof that the [a]ccount ... has been assigned and sold to, [and] is owned by and is payable to BB&T only." If a customer sent payment on a factored invoice to Skywaves, BB&T required Skywaves to hold the payment "as the property of BB&T, without commingling [the payment] with any funds or property of [Skywaves]," and immediately turn the payment over to BB&T. BB&T also required Skywaves to make several covenants and warranties regarding its financial status, including its ability to pay its debts as they matured in the ordinary course of business.
The Agreement was for a one-year term subject to renewal if not terminated by BB&T or Skywaves. BB&T could terminate the Agreement at any time with sixty days' written notice and could terminate the Agreement without notice "after the occurrence of any [e]vent of [d]efault." Events of default included violation of the financial covenants, such as Skywaves' inability to pay its debts as they accrued in the ordinary course of business; Skywaves' failure to comply with any portion of the Agreement or any other agreement it had with BB&T; and "for any other reason [BB&T] deem[ed] itself insecure." The Agreement also provided, "All acts, transactions, rights, and liabilities under this Agreement shall be governed in all respects by, and construed in accordance with, the internal laws of the State of North Carolina." The Agreement stated in bold writing, immediately prior to the signature page, *648 Skywaves waived its right to "trial by jury and the right to trial by jury on any issue in any way pertaining to this Agreement or any transactions or occurrences arising hereunder or governed hereby." Finally, the Agreement set forth "the entire understanding between the parties ... supersed[ing] all prior and contemporaneous agreements and understandings, inducements and conditions, whether express or implied, oral or written, " and provided it "supersede[d] any course of performance and/or usage of the trade inconsistent with any of the terms hereof." (emphasis added).
From the outset, Skywaves contended some of its customers were unable or unwilling to make payments on factored invoices directly to BB&T, and it informed BB&T of this issue. Skywaves alleged it and BB&T orally agreed payments on factored invoices could flow through Skywaves and Skywaves could delay remittance of such payments to BB&T for up to sixty days. No writing reflects the alleged modifications to the Agreement, and on several occasions, BB&T told Skywaves to put the required notification on factored invoices and expressed concern regarding overdue payments on factored invoices. For example, on June 5, 2006, BB&T informed Skywaves "over $150,000 [of payments on factored invoices from Cingular and Nextel were thirty plus] days past due." On August 31, 2007, BB&T contacted Skywaves and asked why it had been holding payments from Verizon on factored invoices for six weeks and reminded Skywaves holding payments "could be viewed as a violation of the [Agreement]." A December 14, 2007 email from BB&T to Skywaves indicated $43,125 worth of accounts were over sixty days past due. Additionally, Skywaves' CFO Voytko admitted Skywaves intermingled the payments it received on the factored invoices, which belonged to BB&T, with Skywaves' funds and used the payments for operating purposes and cash flow.
From 2005 to 2006, Skywaves and BB&T occasionally amended the Agreement via written modifications in order for BB&T to fund Skywaves' working capital needs as those needs developed and expanded. Initially, on June 1, 2005, BB&T reduced the minimum monthly commission required under the Agreement because Skywaves did not begin factoring invoices until late 2005. Next, on May 11, 2006, BB&T and Skywaves executed a written amendment to the factoring agreement, increasing Skywaves' line of credit from $1.5 million to $1.75 million and reducing the minimum monthly commission. Additionally, early in 2006, BB&T began advancing money to Skywaves based on purchase orders it received from Nextel.
In early 2007, Skywaves won several lucrative government contracts, and as a result, its Board of Directors determined the company required more capital to meet the increased demand for its products than BB&T had provided at that time. Skywaves therefore solicited funding proposals from various entities, including Wachovia and Hunt Capital (Hunt). In particular, Hunt sent Skywaves a preliminary, nonbinding term sheet, which was dated March 22, 2007, offering to purchase thirty percent of Skywaves' stock for $4 million.
Edahl, BB&T's relationship manager for Skywaves, assured Skywaves BB&T was familiar with Skywaves' financial needs and could provide for those needs without Skywaves diluting its stock by working with Hunt. Thus, Skywaves decided to obtain the needed funding from BB&T, and BB&T created a unique financing arrangement for Skywaves. On March 2,
2007, BB&T sent a letter to Skywaves, stating the Agreement had been renewed and it had increased Skywaves' line of credit to $3.5 million with a $2 million sublimit for purchase order financing. Under the renewal, BB&T would advance eighty-five percent of the value of an invoice to Skywaves and sixty percent of the value of a purchase order. On March 14, 2007, BB&T sent another letter to Skywaves, clarifying the purchase order advance rate was actually sixty-five percent. BB&T and Skywaves executed a written amendment, making the changes contemplated in the March 2 and March 14 letters. Under the amendment, BB&T would advance funds on the purchase order of any customer.
In the spring of 2007 and again in July 2007, Skywaves asked Edahl if BB&T would advance funds to it on the basis of site *649 plans-potential sites where it anticipated placing shelters if ordered by customers. Konersmann stated Edahl agreed to factor site plans, and Edahl admitted he agreed to factor specific site plans-namely those related to Skywaves' contract with General Dynamics-at the same advance rate as purchase orders.[3] BB&T had never factored site plans before, an arrangement to factor site plans is not reflected in the Agreement or any written amendment to the Agreement, and Edahl's supervisor stated Edahl did not receive approval from him to factor site plans. BB&T advanced funds until January 2008 to Skywaves based on the General Dynamics site plans.
On January 17, 2008, Michael Burke, the new account executive for Skywaves' factoring line, went with Edahl to Skywaves' warehouse. During the visit, Skywaves provided BB&T its 2007 year-end financial statements, which showed Skywaves had not had a profitable month since January 2007 and had closed 2007 with a net loss of $1,388,349.43. Also during the visit, Burke asked Konersmann and Voytko about "a number of items that looked like purchase orders [BB&T] had advanced on that [it was] not getting invoices on." Konersmann and Voytko told Burke the items were not purchase orders, and Burke "was very shocked, very concerned" to learn BB&T was funding money to Skywaves without valid purchase orders. Edahl, out of fear of losing his job, denied knowledge of the site plan factoring and told his superiors at BB&T, in an email sent January 22, 2008, "As we discussed Friday, neither you or I had any idea that the [General Dynamics-New York State] purchase orders funded from July through October were not documented and funded exactly like the other purchase orders."
A January 2008 field audit by BB&T revealed Skywaves had received $320,000 to $340,000 from Verizon on factored invoices and had not turned this money over to BB&T. The audit also revealed that as of January 25, 2008, thirty-seven percent of Skywaves' payables were more than sixty days overdue. Skywaves stated its overdue debts were all to one creditor, StructuredTech, which was owned by a Skywaves' investor who agreed to give Skywaves an extension of time to pay. However, Skywaves admitted the amount owed to StructuredTech only accounted for twenty-five percent of Skywaves' payables.
On January 18, 2008, Edahl informed Skywaves its "over advance ha[d] put [it] in default of the commercial finance loan and that [it] w[ould] be getting written notice of the same shortly." On January 25, 2008, BB&T sent Skywaves written notice it had defaulted under the terms of the Agreement, BB&T refused to honor any further financial commitments, and BB&T was terminating the Agreement. In particular, BB&T asserted Skywaves defaulted because it had received payments for factored accounts and did not immediately turn the payments over to BB&T; Skywaves was not paying its debts in the ordinary course of business; and BB&T had the good faith belief Skywaves' ability to pay BB&T and perform the obligations of the Agreement were impaired.
In response, Skywaves hired an attorney, Earle Hewlette, who wrote to BB&T on Skywaves' behalf, asking BB&T to utilize a rescue plan to save the company and expressing Skywaves' "regret for the mistakes made in the past in dealing with [BB&T]." In its reply to Hewlette's email, BB&T did not agree to utilize the rescue plan. Additionally, BB&T listed eight instances of Skywaves holding payments owed to BB&T in violation of the Agreement, and two of these instances involved Skywaves holding payments for over sixty days.
Due to the absence of funding, Skywaves filed for bankruptcy in April 2008.
On December 3, 2009, Skywaves filed this action against BB&T and Edahl for (1) breach of contract, (2) breach of contract accompanied by fraudulent acts, (3) negligent misrepresentation, (4) fraudulent inducement, and (5) lender liability. Skywaves subsequently filed an amended complaint, asserting claims against BB&T for (1) breach of contract, (2) breach of contract accompanied by fraudulent acts, (3) promissory estoppel, and (4) breach of the covenant of good *650 faith and fair dealing. It also asserted claims against both BB&T and Edahl for (1) negligent misrepresentation, (2) fraudulent misrepresentation, (3) negligence, and (4) violation of SCUTPA. In its amended complaint, Skywaves alleged, "The unfair acts and practices of [BB&T and Edahl] have an impact on the public interest, [and] have a potential for repetition."
In their answers to the amended complaint, BB&T and Edahl both admitted Edahl was an officer of BB&T and worked at the Charleston branch, but they denied that, "At all times relevant hereto, Defendant Edahl was the agent, servant, and employee of Defendant BB&T, and acted within the scope and course of his employment." In 2015, BB&T clarified it did "not deny that Mr. Edahl was its employee, and thus its agent, in the financing provided under the ... Agreement." Additionally, in their answers, BB&T and Edahl denied Skywaves' allegations they agreed to modify the Agreement to provide for the advancement of capital based on site plans and that this modification was memorialized in numerous writings, including emails, letters, and other documents.
BB&T filed a partial motion to dismiss Skywaves' claims for negligent misrepresentation, fraudulent misrepresentation, negligence, violation of the SCUTPA, and breach of contract accompanied by fraudulent acts. Edahl filed a motion to dismiss all of Skywaves' claims against him. At the hearing on the motions to dismiss, BB&T and Edahl argued the lender liability statute of frauds, set forth in section 37-10-107 of the South Carolina Code (2015), barred Skywaves' claims.[4] Skywaves argued the case needed to proceed to trial to determine whether section 37-10-107 was applicable. Skywaves also argued BB&T's representations it could provide Skywaves with adequate financing was a present act that could constitute fraud. Additionally, Skywaves argued its relationship with BB&T exceeded the typical bank-customer relationship because BB&T, through Edahl, advised Skywaves and advised others to invest in Skywaves. Finally, Skywaves argued its allegation that BB&T's conduct had a potential for repetition was "sufficient to establish the impact on the public interest," as required to have a claim under SCUTPA. After the hearing,[5] the circuit court dismissed all of Skywaves' claims against Edahl and also dismissed Skywaves' claims against BB&T for (1) breach of contract accompanied by fraudulent acts, (2) negligent misrepresentation, (3) fraudulent misrepresentation, (4) negligence, and (5) violation of SCUTPA. Skywaves filed a motion to reconsider the dismissal. Skywaves also filed a notice of intent to appeal the order. The circuit court granted Skywaves' motion to reconsider, modifying its order to allow Skywaves to proceed on its claims for breach of contract accompanied by fraudulent acts against BB&T and on its claims for negligence and negligent misrepresentation against BB&T and Edahl. Skywaves then filed a motion to withdraw its appeal as moot, and this court dismissed the appeal.
During Edahl's first deposition on September 19, 2013, he indicated he did not remember agreeing to site plan financing until he heard Konersmann's deposition testimony the week prior to his deposition. Edahl also testified no written modification to the Agreement was made reflecting his oral agreement with Skywaves to factor site plans. He stated that based on the oral agreement, he believed BB&T was obligated to finance site plans and in fact did finance some site plans.
On January 17, 2014, Skywaves filed a motion to strike both BB&T's and Edahl's answers on the ground they were sham pleadings because in their answers, BB&T and Edahl both denied the existence of an oral modification to the Agreement to include site plan factoring and had not amended *651 their answers following Edahl's admission he agreed to site plan factoring. BB&T and Edahl filed motions to amend their answers to address Edahl's new testimony as to site plan factoring. After a hearing, the circuit court denied Skywaves' motion to strike and granted BB&T's and Edahl's motions to amend. At that point, BB&T and Edahl amended their answers to admit that as of March 2007, BB&T and Skywaves "memorialized certain written modifications to the ... Agreement ... to allow for factoring of invoices and purchase orders. [BB&T and Edahl] further admit[ted] an agreement to finance site plans, to a limited extent, with certain limitations on the amounts being factored." However, both Edahl and BB&T continued to deny the site plan funding modification was written.
On February 11, 2014, Edahl provided an affidavit, wherein he stated he "was aware in January 2008 that [he] had agreed to treat certain site plans of General Dynamics the same as purchase orders with respect to the funding under [the Agreement]." During his second deposition on November 21, 2014, Edahl testified he initially denied he had approved site plan factoring out of fear he would lose his job, and he admitted he had approved site plan financing. Furthermore, he stated Skywaves relied on his recommendation to fund its growth with purchase order and site plan financing. Based on Edahl's admission he agreed to site plan factoring, BB&T employee Michael Hennessey admitted in a deposition that Skywaves did not breach the site plan funding accommodation.
Several BB&T employees testified in depositions BB&T makes recommendations and gives advice to its customers; seeks to develop trust with its customers; has a duty to understand its customers' needs; and should treat its customers fairly and not mislead them. A BB&T employee also testified a bank customer is entitled to believe what their relationship manager tells them on behalf of BB&T. Moreover, in its philosophy, BB&T describes itself as a "high-quality financial advice business" and providing "professional sales and risk management direction."
BB&T and Edahl both filed motions for summary judgment and motions to strike Skywaves' demand for a jury trial. On January 12, 2015, the circuit court held a hearing on the motions to strike the demand for a jury trial. At the hearing, BB&T argued the right to a jury trial is a procedural issue and is accordingly governed by the law of the forum, in this case South Carolina. It contended the choice of law provision in the Agreement applied only to substantive issues, not procedural issues. BB&T stated South Carolina allows parties to waive the right to a jury trial in contracts, and therefore, Skywaves waived its right to a jury trial by signing the Agreement, which contained a jury trial waiver. BB&T also maintained its other agreements with Skywaves were governed by South Carolina law and contained jury trial waivers. Edahl agreed with BB&T's arguments and contended the waivers signed by Skywaves were also enforceable as to Skywaves' claims against him because he was BB&T's agent and employee. Skywaves argued the Agreement was governed by North Carolina law, which does not allow for jury trial waivers. Specifically, Skywaves asserted the issue at stake was substantive because it dealt with determining the validity of a contract provision, and thus, North Carolina law applied. Skywaves contended Edahl could not rely on the waiver provision because he was not a party to the Agreement.
After the hearing, the circuit court granted BB&T's and Edahl's motions to strike Skywaves' demand for a jury trial, finding the right to a jury trial was a procedural right, South Carolina law applied, and South Carolina law allows parties to contractually waive the right to jury trial. Skywaves filed a motion to reconsider the order granting BB&T's and Edahl's motions to strike the demand for a jury trial. Skywaves then filed a motion to amend its amended complaint, alleging a claim for violation of the North Carolina Unfair Trade Practices Act. Skywaves also filed a second motion to strike BB&T's and Edahl's answers, arguing because BB&T and Edahl "knowingly took [ ] false positions, unsupported by the evidence, for years in this litigation," the court should apply the doctrines of unclean hands and *652 judicial estoppel to strike BB&T's and Edahl's answers.
Following a hearing,[6] the circuit court filed an order (1) granting in part BB&T's motion for summary judgment; (2) granting Edahl's motion for summary judgment; (3) denying Skywaves' motion to amend its amended complaint; (4) denying Skywaves' motion to strike the answers of BB&T and Edahl; and (5) denying Skywaves' motion to reconsider the order striking its demand for a jury trial. In particular, the circuit court denied BB&T summary judgment on Skywaves' claims for breach of contract and breach of contract accompanied by fraudulent acts. However, the court granted summary judgment to BB&T on Skywaves' claims for promissory estoppel and breach of the covenant of good faith and fair dealing. The court also granted BB&T and Edahl summary judgment as to Skywaves' claims for negligence and negligent misrepresentation because (1) the economic loss doctrine barred the claims, (2) Skywaves could not establish the elements of negligence and negligent misrepresentation, and (3) the lender liability statute of frauds barred the claims. The court denied Skywaves' motion to strike because it found no evidence was presented that BB&T's or Edahl's answers were "manifestly false or made in bad faith." This appeal followed.
LAW/ANALYSIS
I. Skywaves' Appeal
A. Strike of Demand for a Jury Trial
Skywaves argues the circuit court erred by holding it waived its constitutional right to a jury trial by signing the Agreement, which contained a jury trial waiver. It maintains the jury trial waiver was unconscionable and void under North Carolina law, which was the governing law of the Agreement. Skywaves contends the question of the validity of a jury trial waiver in a contract is a substantive legal issue and the issue should therefore be governed by North Carolina law. We agree the circuit court erred by striking Skywaves' demand for a jury trial.
"Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law." Nucor Corp. v. Bell , 482 F.Supp.2d 714, 728 (D.S.C. 2007) ; see also Team IA, Inc. v. Lucas , 395 S.C. 237, 248, 717 S.E.2d 103, 108 (Ct. App. 2011) ("Choice of law clauses are generally honored in South Carolina."); Livingston v. Atl. Coast Line R. Co. , 176 S.C. 385, 391, 180 S.E. 343, 345 (1935) ("[C]ontracts are to be governed as to their nature, validity[,] and interpretation by the law of the place where they are made, unless the contracting parties clearly appear to have had some other place in view."). "However, a choice-of-law clause in a contract will not be enforced if application of foreign law results in a violation of South Carolina public policy." Nucor Corp. , 482 F.Supp.2d at 728 ; see also Simpson v. MSA of Myrtle Beach, Inc. , 373 S.C. 14, 33, 644 S.E.2d 663, 673 (2007) ("This [c]ourt will not enforce a contract which is violative of public policy, statutory law, or provisions of the Constitution."). "[T]he fact that the law of two states may differ does not necessarily imply that the law of one state violates the public policy of the other." Nash v. Tindall Corp. , 375 S.C. 36, 41, 650 S.E.2d 81, 84 (Ct. App. 2007) (alteration in original) (quoting Boone v. Boone , 345 S.C. 8, 13-14, 546 S.E.2d 191, 191 (2001) ).
Under North Carolina law, "Any provision in a contract requiring a party to the contract to waive his right to a jury trial is unconscionable as a matter of law and the provision shall be unenforceable." N.C. Gen. Stat. § 22B-10 (2017). Conversely in South Carolina, "[a] party may waive the right to a jury trial by contract." Wachovia Bank, Nat'l Ass'n v. Blackburn , 407 S.C. 321, 332, 755 S.E.2d 437, 443 (2014) (quoting Beach Co. v. Twillman, Ltd. , 351 S.C. 56, 63, 566 S.E.2d 863, 866 (Ct. App. 2002) ). "[T]he right to a trial by jury is a substantial right, and we 'strictly construe' such waivers." Id . (quoting Twillman , 351 S.C. at 64, 566 S.E.2d at 866 ). However, "[a] person who signs a contract or other written document cannot avoid the effect of the document by claiming that he did not read it." Id . at 332-33, 755 S.E.2d at 443 (alteration in original) (quoting *653 Regions Bank v. Schmauch , 354 S.C. 648, 663, 582 S.E.2d 432, 440 (Ct. App. 2003) ).
We find the circuit court erred by striking Skywaves' demand for a jury trial. Although the circuit court found the right to a jury trial is a procedural issue, the issue here is not the question of the right to a jury trial but rather, the enforceability of a contract provision. See Green v. U.S. Auto. Ass'n Auto & Prop. Ins. Co. , 407 S.C. 520, 523-25, 756 S.E.2d 897, 899-900 (2014) (finding the issue in the case was not parental immunity, which had been abolished in South Carolina, but the enforceability of a contract provision and holding the "family member exclusion [policy] contained in the Florida automobile [insurance] policy at issue ... [was] not void as against [South Carolina] public policy"). Because this is a question of contract validity, and South Carolina courts generally uphold choice of law provisions, we find North Carolina law applies to determine the validity and enforceability of the contractual waiver of the right to a jury trial.[7] See Nucor Corp. , 482 F.Supp.2d at 728 ("Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law."). Thus, the contractual waiver of the right to a jury trial is void and unenforceable. N.C. Gen. Stat. § 22B-10 ("Any provision in a contract requiring a party to the contract to waive his right to a jury trial is unconscionable as a matter of law and the provision shall be unenforceable.").
Furthermore, North Carolina's policy of finding contractual jury trial waivers unenforceable is not void as against South Carolina public policy. See Nash , 375 S.C. at 41, 650 S.E.2d at 84 ("[T]he fact that the law of two states may differ does not necessarily imply that the law of one state violates the public policy of the other." (alteration in original) (quoting Boone , 345 S.C. at 13-14, 546 S.E.2d at 191 ) ). South Carolina's public policy regarding contracts focuses on holding parties to their contract provisions and the effect of those provisions. See Blackburn , 407 S.C. at 332-33, 755 S.E.2d at 443 ("A person who signs a contract or other written document cannot avoid the effect of the document by claiming that he did not read it." (alteration in original) (quoting Regions Bank , 354 S.C. at 663, 582 S.E.2d at 440 ) ). Therefore, South Carolina public policy would support holding BB&T and Edahl to their choice of law provision, which has the effect of voiding the jury trial waiver. Thus, we find the jury trial waiver is unenforceable, and the circuit court erred in striking Skywaves' demand for a jury trial.[8] Accordingly, we reverse the circuit court's decision on this issue.
B. Grant of Summary Judgment as to Negligence and Negligent Misrepresentation
Skywaves argues the circuit court erred by granting summary judgment as to its tort claims because it presented evidence (1) Edahl and BB&T owed a duty to Skywaves; (2) Edahl and BB&T breached that duty; (3) Skywaves justifiably relied on BB&T and Edahl; and (4) Skywaves' reliance on Edahl and BB&T proximately caused Skywaves damages. In its reply brief, Skywaves contends the two-issue rule does not apply here because the economic loss doctrine and the lender liability statute of frauds in section 37-10-107 were not implicated in its appeal. We disagree.
"Under the two[-]issue rule, whe[n] a decision is based on more than one ground, the appellate court will affirm unless *654 the appellant appeals all grounds because the unappealed ground will become the law of the case." Jones v. Lott , 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010). "It should be noted that although cases generally have discussed the 'two[-]issue' rule in the context of the appellate treatment of general jury verdicts, the rule is applicable under other circumstances on appeal, including affirmance of orders of [circuit] courts." Id . at 346, 692 S.E.2d at 904 (quoting Anderson v. S.C. Dep't of Highways & Pub. Transp. , 322 S.C. 417, 472 S.E.2d 253, 255 n.1 (1996) ). "[A]n unappealed ruling, right or wrong, is the law of the case." Atl. Coast Builders & Contractors, LLC v. Lewis , 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012).
We affirm the grant of summary judgment to BB&T and Edahl on Skywaves' claims for negligence and negligent misrepresentation based on the two-issue rule. The circuit court granted summary judgment on Skywaves' claims for negligence and negligent misrepresentation on the grounds that (1) the economic loss doctrine barred the claims, (2) the lender liability statute of frauds barred the claims, and (3) Skywaves could not prove the elements of the claims. However, Skywaves only appealed the ground that it could not prove the elements of negligence and negligent misrepresentation. Because Skywaves did not appeal the grounds of the economic loss doctrine or the lender liability statute, these grounds became the law of the case. See Jones , 387 S.C. at 346, 692 S.E.2d at 903 ("Under the two[-]issue rule, whe[n] a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case."); see also Lewis , 398 S.C. at 329, 730 S.E.2d at 285 ("[A]n unappealed ruling, right or wrong, is the law of the case."). Accordingly, we affirm the grant of summary judgment on Skywaves' claims for negligence and negligent misrepresentation.
C. Dismissal of SCUTPA Claim
Skywaves argues the circuit court erred by dismissing its SCUTPA claim for failing to make any allegations BB&T and Edahl's conduct affected the public interest. Skywaves maintains it presented evidence BB&T and Edahl's conduct created a potential for repetition because their conduct-undertaking to provide advice-was part of BB&T's institutional procedures. We disagree.
When a court is considering a motion to dismiss and matters outside the pleadings are presented to and not excluded by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, [SCRCP,] and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."
*453 Martin v. Companion Healthcare Corp. , 357 S.C. 570, 574, 593 S.E.2d 624, 627 (Ct. App. 2004) (quoting Rule 12(b), SCRCP ). "An appellate court reviews the granting of summary judgment under the same standard applied by the [circuit] court." Wells v. City of Lynchburg , 331 S.C. 296, 301, 501 S.E.2d 746, 749 (Ct. App. 1998).
A [circuit] court should grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
Id. (quoting Rule 56(c), SCRCP ). "Summary judgment should be granted when plain, palpable, and undisputable facts exist on which reasonable minds cannot differ." NationsBank v. Scott Farm , 320 S.C. 299, 302-03, 465 S.E.2d 98, 100 (Ct. App. 1995). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." Id . at 303, 465 S.E.2d at 100. "In order to resist a motion for summary judgment, the nonmoving party must come forward with specific facts showing genuine issues necessitating trial." Id ."Once a party moving for summary judgment carries the initial burden of showing an absence of evidentiary support for the nonmoving party's case, the nonmoving party may not simply rest on mere allegations or denials contained in the pleadings." Id.
*655 Under SCUTPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." S.C. Code Ann. § 39-5-20(a) (1985). In order to be actionable under SCUTPA, the unfair or deceptive act or practice must have an impact on the public interest. See Noack Enters., Inc. v. Cty. Corner Interiors, Inc. , 290 S.C. 475, 477-78, 351 S.E.2d 347, 349 (Ct. App. 1986). "An unfair or deceptive act or practice that affects only the parties to a trade or a commercial transaction is beyond the act's embrace." Id . at 479, 351 S.E.2d at 349-50.
An impact on the public interest may be shown if the acts or practices have the potential for repetition. The potential for repetition may be shown in either of two ways: (1) by
showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts.
Singleton v. Stokes Motors, Inc. , 358 S.C. 369, 379, 595 S.E.2d 461, 466 (2004).
We find the circuit court did not err by granting the motion to dismiss Skywaves' SCUTPA claims. Initially, in Kerr v. Branch Banking & Trust Co. , the supreme court found despite filing motions to dismiss, the plaintiffs-which included Skywaves-provided materials outside of the pleadings and the trial court relied on those materials, converting the motions to dismiss into motions for summary judgment. 408 S.C. 328, 329 n.1, 759 S.E.2d 724, 725 n.1 (2014). Similarly, we must evaluate this issue under the applicable standard for summary judgment, rather than the standard for a motion to dismiss. See Martin , 357 S.C. at 574, 593 S.E.2d at 627 ("When a court is considering a motion to dismiss and matters outside the pleadings are presented to and not excluded by the court, 'the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, [SCRCP,] and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.' " (quoting Rule 12(b), SCRCP ) ); Wells , 331 S.C. at 301, 501 S.E.2d at 749 ("An appellate court reviews the granting of summary judgment under the same standard applied by the [circuit] court.").
Viewing the evidence in the light most favorable to Skywaves, we find no genuine issue of material fact exists as to whether Edahl and BB&T's conduct affected the public interest. See Wells , 331 S.C. at 301, 501 S.E.2d at 749 ("A [circuit] court should grant a motion for summary judgment when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " (quoting Rule 56(c), SCRCP ) ); NationsBank , 320 S.C. at 303, 465 S.E.2d at 100 ("In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party."); Noack Enters., Inc. , 290 S.C. at 477-78, 351 S.E.2d at 349 (providing in order to be actionable under SCUTPA, the unfair or deceptive act or practice must have an impact on the public interest); see also Singleton , 358 S.C. at 379, 595 S.E.2d at 466 ("An impact on the public interest may be shown if the acts or practices have the potential for repetition. The potential for repetition may be shown in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts.").
Here, Skywaves provided no evidence to the circuit court BB&T had engaged in violations in the past. Moreover, Skywaves provided no evidence to the circuit court BB&T's institutional procedures-giving advice to customers-created a potential for repetition of unfair and deceptive acts. Instead, on this point, Skywaves relied on its pleadings, which stated "unfair acts and practices of [BB&T and Edahl] have an impact on the public interest, have potential for repetition." Because Skywaves relied solely on the mere allegations in its complaint and did not provide *656 further evidentiary support, BB&T and Edahl were entitled to summary judgment on the SCUTPA claim. See NationsBank , 320 S.C. at 303, 465 S.E.2d at 100 ("Once a party moving for summary judgment carries the initial burden of showing an absence of evidentiary support for the nonmoving party's case, the nonmoving party may not simply rest on mere allegations or denials contained in the pleadings.").
Additionally, the majority of Skywaves' argument to the circuit court detailed how BB&T and Edahl treated Skywaves differently than a normal bank customer by giving it advice and asking others to invest in Skywaves, causing BB&T and Edahl to have a fiduciary duty to Skywaves that is not normally owed by a bank to a customer. By arguing BB&T treated Skywaves differently from any other customer, Skywaves admitted BB&T and Edahl's treatment of it was not a standard company procedure with the potential for repetition. Accordingly, the circuit court did not err in dismissing Skywaves' SCUTPA claim, and we affirm the circuit court's dismissal of the claim.[9]
D. Motion to Strike BB&T's and Edahl's Answers
Skywaves argues the circuit court erred by not granting its motion to strike BB&T's and Edahl's answers and entering default against them as a sanction for their deceitful conduct. In particular, Skywaves asserts BB&T and Edahl lied in their answers about Edahl's position as an agent of BB&T and the nature of the relationship between BB&T and Skywaves. Skywaves asserts BB&T and Edahl continued to perpetuate this fraud on the court by denying the existence of the site plan financing modification even after Edahl admitted he agreed to site plan financing. Additionally, Skywaves asks this court to strike BB&T's and Edahl's answers through the doctrines of unclean hands or judicial estoppel. We disagree. "A motion to strike is addressed to the sound discretion of the [circuit court] and will not be disturbed in the absence of a clear showing of prejudicial error." S.C. Dep't of Health & Envtl. Control v. Fed-Serv Indus., Inc. , 294 S.C. 33, 39, 362 S.E.2d 311, 314-15 (Ct. App. 1987). "The imposition of sanctions is generally entrusted to the sound discretion of the [c]ircuit [c]ourt." Karppi v. Greenville Terrazzo Co. , 327 S.C. 538, 542, 489 S.E.2d 679, 681 (Ct. App. 1997) (quoting Downey v. Dixon , 294 S.C. 42, 45, 362 S.E.2d 317, 318 (Ct. App. 1987) ). "A [circuit] court's exercise of its discretionary powers with respect to sanctions imposed in discovery matters will be interfered with by the [c]ourt of [a]ppeals only if an abuse of discretion has occurred." Id ."The burden is upon the party appealing from the order to demonstrate the [circuit] court abused its discretion." Id ."An abuse of discretion may be found whe[n] the appellant shows that the conclusion reached by the [circuit] court was without reasonable factual support and resulted in prejudice to the rights of appellant, thereby amounting to an error of law." Id .
"In determining the appropriateness of a sanction, the court should consider such factors as the precise nature of the discovery and the discovery posture of the case, willfulness, and degree of prejudice." McNair v. Fairfield County , 379 S.C. 462, 467, 665 S.E.2d 830, 832-33 (Ct. App. 2008) (quoting Griffin Grading & Clearing, Inc. v. Tire Serv. Equip. Mfg. Co. , 334 S.C. 193, 199, 511 S.E.2d 716, 719 (Ct. App. 1999) ). "Therefore, the sanction should be aimed at the specific conduct of the party sanctioned and *657 not go beyond the necessities of the situation to foreclose a decision on the merits of a case." Griffin Grading & Clearing, Inc. , 334 S.C. at 198, 511 S.E.2d at 719. "Whe[n] the sanction would be tantamount to granting a judgment by default, the moving party must show bad faith, willful disobedience[,] or gross indifference to its rights to justify the sanction." Id . at 198-99, 511 S.E.2d at 719.
We find the circuit court did not abuse its discretion by denying Skywaves' motion to strike BB&T's and Edahl's answers. In its motion to strike, Skywaves asserted BB&T and Edahl consistently lied and engaged in deceitful conduct by refusing to admit Edahl was an agent of BB&T and by denying the existence of the site plan factoring agreement. However, BB&T and Edahl both admitted Edahl was an employee of BB&T, and BB&T's and Edahl's refusal to admit that, "At all times relevant hereto, Defendant Edahl was the agent, servant, and employee of Defendant BB&T, and acted within the scope and course of his employment," does not constitute deceitful conduct. If BB&T and Edahl had admitted this statement instead of refusing it, they would have conceded all of Edahl's actions involving Skywaves were within the scope of his employment, including the authorization of site plan financing without the approval of his supervisors at BB&T. Moreover, in its amended complaint Skywaves alleged the parties modified the Agreement to include site plan factoring and these modifications were memorialized in writing. In their original answers, BB&T and Edahl denied these allegations outright, but after Edahl admitted he agreed to site plan factoring, both BB&T and Edhal amended their answers to reflect the Agreement was orally modified to include limited site plan factoring. The record on appeal contains no writing memorializing the agreement to factor site plans, and Edahl testified this modification was not memorialized in writing. Thus, we find Edahl and BB&T were not acting in bad faith or perpetuating fraud on the court by denying Skywaves' allegation they made a written modification to the Agreement to include factoring site plans. Therefore, we find the circuit court did not abuse its discretion in denying Skywaves' motion to strike BB&T's and Edahl's answers. See Griffin Grading & Clearing, Inc. , 334 S.C. at 198-99, 511 S.E.2d at 719 ("Whe[n] the sanction would be tantamount to granting a judgment by default, the moving party must show bad faith, willful disobedience[,] or gross indifference to its rights to justify the sanction.").
Additionally, Skywaves cites to several cases in support of its argument South Carolina courts have been more open to striking the answer of a defendant in recent years. See Barnette v. Adams Bros. Logging , 355 S.C. 588, 595, 586 S.E.2d 572, 576 (2003) (holding the circuit court did not abuse its discretion by dismissing one of the plaintiff's actions "[g]iven [plaintiff's] persistent refusal to comply with the trial court's orders"); McNair , 379 S.C. at 464-67, 665 S.E.2d at 831-33 (holding the circuit court did not abuse its discretion by striking the defendant's answer because the defendant failed to (1) produce documents requested during discovery, (2) coherently organize the documents it did produce, and (3) provide complete responses to interrogatories, and the court told defendant to correct the discovery issues several times and warned the defendant "it was inclined to strike [defendant's] answer"); QZO, Inc. v. Moyer , 358 S.C. 246, 257-58, 594 S.E.2d 541, 548 (Ct. App. 2004) (holding the circuit court did not abuse its discretion by striking appellant's answer in response to appellant's intentional defiance of the trial court's temporary restraining order and his willful destruction of evidence); Griffin Grading & Clearing, Inc. , 334 S.C. at 199-200, 511 S.E.2d at 719 (affirming the circuit court's order striking defendant's answer when defendant "admitted at oral argument that the failure to comply with certain discovery in this case was 'indefensible' " and had failed to comply with four prior orders from the court); Halverson v. Yawn , 328 S.C. 618, 620-21, 493 S.E.2d 883, 884-85 (Ct. App. 1997) (affirming the circuit court's order striking appellant's complaint because plaintiff failed to comply with the court's order to comply with discovery and presented no evidence showing she complied with the order). However, unlike the defendants in the cited cases, BB&T and Edahl never violated a court order. Thus, the cases cited by Skywaves *658 are factually and legally distinguishable from this case. Accordingly, the circuit court did not err in denying Skywaves' motion to strike, and we affirm as to this issue.
II. BB&T's Appeal
BB&T argues the circuit court erred in denying its motion for summary judgment on Skywaves' claims for breach of contract and breach of contract accompanied by fraudulent acts. BB&T maintains this court has jurisdiction over the denial of its motion for summary judgment because this case, which has been pending since 2009, needs resolution and because the denial of summary judgment is closely related to the issues raised in Skywaves' appeal. We disagree.
"A denial of a motion for summary judgment decides nothing about the merits of the case, but simply decides the case should proceed to trial." Ballenger v. Bowen , 313 S.C. 476, 477, 443 S.E.2d 379, 380 (1994). "The denial of summary judgment does not establish the law of the case, and the issues raised in the motion may be raised again later in the proceedings by a motion to reconsider the summary judgment motion or by a motion for a directed verdict." Id ."[I]t is unnecessary to make findings of fact and conclusions of law in denying motions for summary judgment." Id. at 478 n.1, 443 S.E.2d at 380 n.1.
In Olson v. Faculty House of Carolina, Inc. , this court stated denials of motions for summary judgment are generally not immediately appealable but acknowledged the exception that "courts have made a practice of accepting appeals of denials of interlocutory orders not ordinarily appealable when these appeals are companion to issues that are reviewable." 344 S.C. 194, 216, 544 S.E.2d 38, 49 (Ct. App. 2001), aff'd , 354 S.C. 161, 580 S.E.2d 440 (2003). In particular, this court noted Garrett v. Snedigar , 293 S.C. 176, 359 S.E.2d 283 (Ct. App. 1987), which stated the appeal of a denial of a motion for summary judgment was properly before the court because the issue of whether the circuit court erred in granting summary judgment was properly before the court. Olson , 344 S.C. at 216-17, 544 S.E.2d at 50. However, this court also noted "the continued viability of Garrett is debatable given the recent decisions of Silverman v. Campbell , 326 S.C. 208, 486 S.E.2d 1 (1997) [,[10] ] and Ballenger v. Bowen , 313 S.C. 476, 443 S.E.2d 379 (1994).[11 ]" Olson , 344 S.C. at 218, 544 S.E.2d at 51. This court then declined to address the denial of summary judgment "[b]ecause of the dissonance in the precedent in regard to the appealability of the denial of a motion for summary judgment." Id . at 219, 544 S.E.2d at 51.
The supreme court granted certiorari to review the decision reached by this court in Olson . Olson v. Faculty House of Carolina, Inc. , 354 S.C. 161, 163, 580 S.E.2d 440, 441 (2003). The supreme court held "the denial of a motion for summary judgment is not appealable, even after final judgment," overruled Garrett and other cases cited by this court to the extent they were inconsistent with the supreme court's holding, and affirmed this court's refusal to consider the denial of summary judgment. Id . at 168, n.8, 580 S.E.2d at 444, n.8. But see Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp. , 368 S.C. 342, 371, 628 S.E.2d 902, 918 (Ct. App. 2006) (dismissing an appeal from the denial of summary judgment but recognizing an appellate court "may entertain appeals from interlocutory orders not ordinarily appealable when they are companion to reviewable issues").
Based on the supreme court's decision in Olson to affirm this court's refusal to consider a denial of summary judgment and to overrule Garrett , we find the supreme court did not intend for the exception allowing orders that are not immediately appealable to be reviewed on appeal when accompanied by a related, immediately-appealable order to apply to orders denying motions for summary judgment. Thus, the circuit court's order *659 denying BB&T summary judgment as to Skywaves' claims for breach of contract and breach of contract accompanied by fraudulent acts is not appealable. See Olson , 354 S.C. at 168, 580 S.E.2d at 444 ("[T]he denial of a motion for summary judgment is not appealable, even after final judgment."). Consequently, we dismiss BB&T's appeal.
CONCLUSION
We affirm the circuit court's orders (1) granting summary judgment to BB&T and Edahl on Skywaves' claims of negligence and negligent misrepresentation; (2) dismissing Skywaves' SCUTPA claim; and (3) denying Skywaves' motion to strike BB&T's and Edahl's answers. Additionally, we dismiss BB&T's appeal of the circuit court order denying summary judgment to BB&T on Skywaves' claims for breach of contract and breach of contract accompanied by fraudulent acts. Further, we reverse the circuit court's order granting BB&T's and Edahl's motions to strike Skywaves' demand for a jury trial on Skywaves' claims against BB&T for breach of contract and breach of contract accompanied by fraudulent acts. Accordingly, the circuit court is
AFFIRMED IN PART, REVERSED IN PART, AND DISMISSED IN PART.
LOCKEMY, C.J., and WILLIAMS, J., concur.

S.C. Code Ann. §§ 39-5-10 to -560 (1985 & Supp. 2017) ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.").

Skywaves and BB&T also entered into a 2005 loan agreement, a 2005 promissory note, a 2005 security agreement, a 2007 promissory note, and a 2007 security agreement. In each document, Skywaves waived its right to a jury trial on any claim related to the documents or "the conduct of the relationship between" BB&T and Skywaves. Moreover, all of these documents provided South Carolina law would govern any claims arising out of the documents.

General Dynamics was one of Skywaves' customers and had a contract with the state of New York to deliver shelter units to New York's cell towers.

Section 37-10-107 provides, "No person may maintain an action for legal or equitable relief ... based upon failure to perform an alleged ... agreement ... to lend or borrow money ... unless the party seeking to maintain the action ... has received a writing from the party to be charged ...."

The hearing involved BB&T's and Edahl's motions to dismiss Skywaves' claims, as well as the claims of Konersmann, Voytko, and three Skywaves investors.

The transcript of this hearing was not included in the record on appeal.

Furthermore, we note that under North Carolina choice of law principles, the result would be the same. See Tanglewood Land Co. v. Byrd , 299 N.C. 260, 261 S.E.2d 655, 656 (1980) ("[T]he interpretation of a contract is governed by the law of the place where the contract was made."); id . ("[However], whe[n] parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect.").

We recognize Skywaves waived its right to a jury trial in several other agreements with BB&T, which stated they were governed by South Carolina law. However, the Agreement provided it "supersed[ed] all prior or contemporaneous agreements" of the parties and "any course of performance and/or usage of the trade inconsistent with the terms [of the Agreement]." Thus, because the issues in this case pertain to the Agreement, the choice of law provisions in the other documents are irrelevant.

Even if Skywaves' motion to dismiss had not been converted to a motion for summary judgment, the circuit court did not err in dismissing Skywaves' SCUTPA claim because Skywaves merely stated BB&T and Edahl's conduct satisfied the public interest requirement of SCUTPA without alleging any particularized facts. See Grimsley v. S.C. Law Enf't Div. , 396 S.C. 276, 281, 721 S.E.2d 423, 426 (2012) ("On appeal from the dismissal of a case pursuant to Rule 12(b)(6), an appellate court applies the same standard of review as the [circuit] court." (quoting Rydde v. Morris , 381 S.C. 643, 646, 675 S.E.2d 431, 433 (2009) ) ); id . ("If the facts alleged and inferences deducible therefrom would entitle the plaintiff to any relief, then dismissal under Rule 12(b)(6) is improper."); Jones v. Gilstrap , 288 S.C. 525, 528, 343 S.E.2d 646, 648 (Ct. App. 1986) (providing that even under the liberal standard applicable on a motion to dismiss, a mere conclusory allegation, unsupported by any particularized allegations of fact, is insufficient).

In Silverman , the supreme court refused to consider the denial of a motion for summary judgment but did consider another issue raised by the appellants. 326 S.C. at 211, 486 S.E.2d at 2.

In Ballenger , the supreme court found appeals of the denial of summary judgment are not appealable, even after final judgment. 313 S.C. at 476-77, 443 S.E.2d at 380.